IN RE APPLICATION OF BURCH.

[Cite as *In re Application of Burch,* 133 Ohio St.3d 82, 2012-Ohio-3935.]

*Attorneys—Character and fitness—History of lack of candor and errors in judgment during law-school career weigh against approval of application for admission to the bar—Applicant may reapply to take a later bar examination upon demonstration of her character and fitness.*

(No. 2012-0430—Submitted June 5, 2012—Decided September 6, 2012.)

ON REPORT by the Board of Commissioners on Character and

Fitness of the Supreme Court, No. 501.

_____

**Per Curiam.**

{¶ 1} Robin Leigh Burch of Cincinnati, Ohio, is a 2010 graduate of the University of Cincinnati College of Law and has applied as a candidate for admission to the bar. This matter is before the court on Burch's application to take the July 2011 bar exam. The Board of Commissioners on Character and Fitness expresses serious concerns about Burch's conduct during law school, including her lack of diligence and failure to abide by law-school rules, her unprofessional conduct, and her failure to accept responsibility for those actions. Believing that Burch needs additional time to mature, the board recommends that Burch's application be disapproved and that she be permitted to apply for the February 2013 bar exam.

{¶ 2} Burch objects to the board's recommendation, arguing that she has proven by clear and convincing evidence that she presently possesses the requisite character and fitness to practice law. Therefore, she urges this court to reject the board's recommendation, approve her application, and permit her to take the July

2012 bar exam. For the reasons that follow, we overrule Burch's objection and adopt the board's recommendation.

**Summary of Proceedings**

{¶ 3} Burch has applied as a candidate for admission to the Ohio bar and first applied to take the July 2010 bar exam. The Office of Bar Admissions did not receive final approval of her character and fitness in sufficient time for her to sit for that exam and, consequently, did not permit her to take that exam. She later applied to take the July 2011 bar exam.

{¶ 4} As part of the admissions process, Burch was interviewed by different teams of Cincinnati Bar Association Admissions Committee members in June and November 2010. The questions at those interviews focused on a report submitted to the National Conference of Bar Examiners ("NCBE") by the University of Cincinnati College of Law, detailing a number of instances of conduct that officials believed to reflect upon Burch's fitness to practice law, including

(1) failing to comply with requirements in courses taken in the spring of 2008 and fall of 2009, which resulted in her unauthorized withdrawal from the courses and failing grades, and failing to submit an assigned paper and acceptable work in another class, which resulted in her not passing a portion of that class,

(2) making comments in an open courtroom during a judicial externship that were critical of the court process and its participants and were heard by others in the courtroom,

(3) failing to disclose to a dean that she had not completed course work from the previous semester as she sought permission to exceed the credit-hour limit for the last semester of law school, and

(4) signing of an attorney-instructor's name to a court document without authorization.

**{¶ 5}** Expressing concern not only with Burch's conduct, but also with her attitude that the rules did not apply to her, her failure to accept responsibility for her actions, her compulsive need to excuse her behavior, and her difficulty being forthright when asked direct questions, both sets of interviewers recommended that Burch's application be disapproved on her character and fitness.

**{¶ 6}** Pursuant to the procedures of the local admissions committee, Burch appeared before an eight-member review panel to answer additional questions about her conduct in law school, as well as her diagnoses of depression and attention deficit disorder and how those conditions contributed to her conduct or would affect her fitness to practice law. Based upon the testimony of Burch and Nancy Ent, program manager for the Urban Morgan Institute for Human Rights, who had supervised Burch's work as an editor for Human Rights Quarterly, the review panel recommended that Burch be approved. And in May 2011, the admissions committee certified that Burch possessed the requisite character, fitness, and moral qualifications required for the admission to the practice of law in Ohio. The board, however, exercised its authority pursuant to Gov.Bar R. I(10)(B)(2)(e) to further investigate Burch's character and fitness in light of her mental-health issues and the concerns expressed in the law-school report to the NCBE.

**{¶ 7}** The panel assigned to hear the case identified the following critical issues: (1) whether Burch has become more willing to recognize that rules apply to her even if she does not agree with them, (2) whether Burch is willing to meet all of her obligations, not just the ones she wants to meet, and (3) whether she is willing to accept responsibility for her actions instead of attempting to justify her behavior.

**{¶ 8}** Megan Snyder, a licensed independent social worker and a clinical associate with the Ohio Lawyers Assistance Program ("OLAP"), testified that Burch had been referred to OLAP by the Cincinnati Bar Association. Because Burch had longstanding diagnoses of depression and attention deficit disorder, Snyder did not conduct an independent assessment. Based upon their discussion, however, Burch entered into a two-year mental-health-recovery contract and has substantially complied with its requirements. Snyder testified that OLAP has no objection to Burch's being permitted to sit for the bar exam.

**{¶ 9}** Dr. Paul Droessler, Burch's treating psychiatrist, testified that he began to manage Burch's medications in 2007 following her move to Cincinnati and that shortly thereafter, Burch agreed to participate in psychotherapy with him on an ongoing basis. Dr. Droessler stated that with continuing psychotherapy and medication, Burch's prognosis is fair. He noted that she has a tendency to be unfocused and to engage in rambling discourse rather than directly answering a question, but expressed his opinion that her failure to meet deadlines and other responsibilities was more a choice than a result of her mental-health conditions, stating that she was "more unwilling than unable."

**{¶ 10}** Nancy Ent, of the Urban Morgan Institute, also testified on Burch's behalf. Ent's job duties include overseeing several internship programs as well as the Human Rights Quarterly, the Institute's journal on human rights. Burch worked on the journal approximately 20 hours per week during her second and third years of law school, primarily performing blue-book citation checking and proofreading. Ent testified that Burch was a first-rate cite checker and that she performed her duties responsibly. She acknowledged that Burch, like other students, had issues meeting deadlines at first but stated that she resolved Burch's issues by breaking tasks down into components and giving her more specific deadlines for each of the tasks. The panel believed that Ent was an honest witness but noted that she was a "strong supporter of the applicant." And because her

experience with Burch was largely positive, the panel members expressed concern that she did not take the law school's report seriously. Therefore, the panel did not ascribe great weight to Ent's opinion that Burch had matured after graduating from law school or her prediction that Burch would take responsibility, meet deadlines, and conduct herself professionally if she were admitted to the practice of law.

{¶ 11} Though Burch had minor disagreements with the facts set forth in the law school's report, she stipulated that most of the alleged conduct did occur. The panel found that Burch's testimony gave credence to the concerns of the law school and the admissions committee.

{¶ 12} The panel summarized Burch's testimony:

> [S]he vacillated from acknowledging that she had these issues to attempting to justify her right to, for example, not attend class or complete certain assignments because she was paying for law school and if she wanted to spend her time in what she considered more productive activities, she was entitled to do that. She also indicated that she was not aware that there would be such serious consequences for her actions, with the implication being that the consequences were unfair because she had no warning of them. Disturbingly, the applicant did not seem to exhibit any insight into her behavior or to express any recognition that her actions may not have been proper. Although she indicated that she would not conduct herself in this manner when a client's interests were at stake, this was not because she seemed to recognize that her behavior under the circumstances was problematic, but rather that the circumstances of representing a client would necessarily cause her to act responsibly.

**{¶ 13}** To emphasize Burch's lack of understanding and failure to accept responsibility, the panel cited the following passage from her testimony:

So, I feel like, you know, there have been issues, but, I mean, I've done it. You know, I have a Bachelor of Science in math, a JD. I mean I've been all over the world. I built a darkroom in my basement during my first year of law school.

\* \* \*

I mean, now is the time to be modest, but I am one of the most talented people you will ever meet. In fact, I have gotten to this point in my life and spent the last, you know, I mean, what, well over a year and a half kind of stymied, for lack of a better term, because of two pieces of paper, you know.

And, yeah, I take responsibility. I screwed up. I did some things that were stupid, not in my best interest. Of course, did I realize the consequences that were ultimately going to come? No. Did I realize some of the immediate consequences at the time? Yeah, some of them.

I agree with Nancy [Ent], some of them ended up being harsher than they should have been. You know, I'm not the only student to ever miss classes, but I am the only one who got called out for it so much.

So, you know, I got on the wrong side of the wrong people. That's unfortunate, and it doesn't negate what I did. But, you know, it's just, you know, I messed up, but when it comes to—and I'll be the first to admit, I hated law school, you know.

**{¶ 14}** As the board observed:

> The difficulty with such vacillation by the applicant is that it fails to recognize that she did not just miss some classes; she repeatedly missed deadlines on significant course assignments and then because she probably would have failed the course, she withdrew from it. She conducted herself in an unprofessional manner during her judicial externship by making untoward comments about court personnel and procedure. And, she without permission signed an attorney's name to a document to be filed with the Court. Moreover, throughout the entire process from her initial interviews through to this panel's hearing, she continued on one hand to say both "I'm responsible" but followed always by "I was treated too harshly" and "I got on the wrong side of the wrong people." At best, the applicant's attitude makes for an unattractive presentation; at worst it calls into question fitness to undertake professional responsibilities.

**{¶ 15}** Based upon these findings, the panel found that Burch had not proven by clear and convincing evidence that she presently possesses the requisite character and fitness to be admitted to the Ohio bar. Expressing hope that with more time to mature, Burch will one day be able to satisfy this burden, the panel recommended that Burch not be approved for admission, but that she be permitted to apply for the July 2012 bar exam.

**{¶ 16}** The board adopted the panel's findings of fact and recommendation that Burch's current application be disapproved but recommended that Burch be permitted to apply for the February 2013 bar examination.

**Objection to the Board Recommendation and Disposition**

{¶ 17} An applicant to the Ohio bar must prove by clear and convincing evidence that he or she "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). The applicant's record must justify "the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them." Gov.Bar R. I(11)(D)(3). "A record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval of the applicant." *Id.*

{¶ 18} Gov.Bar R. I(11)(D)(3) and (4) provide nonexhaustive lists of factors that the admissions committee and the board must consider before making a recommendation concerning an applicant's character, fitness, and moral qualifications. Among the factors to be considered are whether the applicant has engaged in false statements, including omissions, or neglect of professional obligations. Gov.Bar R. I(11)(D)(3)(h) and (l).

{¶ 19} Burch objects to the board's recommendation and contends that if the evidence is properly weighed, she has proven by clear and convincing evidence that she presently possesses the requisite character, fitness, and moral qualifications to practice law. She argues that the panel and board placed undue weight on the mistakes she made in law school but did not adequately credit her testimony in which she claims to have (1) accepted responsibility for her past conduct, (2) fulfilled her professional obligations in her nonlegal employment following her graduation from law school, (3) substantially complied with her OLAP contract, and (4) demonstrated that she understands the significance of an attorney's duty to her clients.

{¶ 20} Gov.Bar R. I(11)(D)(4) sets forth a number of factors to be considered in assigning weight and significance to an applicant's prior conduct: (a) age of the applicant at the time of the conduct, (b) recency of the conduct, (c)

reliability of the information concerning the conduct, (d) seriousness of the conduct, (e) factors underlying the conduct, (f) cumulative effect of the conduct, (g) evidence of rehabilitation, (h) positive social contributions of the applicant since the conduct, (i) candor of the applicant in the admissions process, and (j) materiality of any omissions or misrepresentations.

{¶ 21} Despite Burch's protestations, a number of these factors weigh in favor of the panel's and board's findings. Her misconduct did not involve youthful indiscretions. It occurred while she was in law school and contemplating her future admission to the bar. *See* Gov.Bar R. I(11)(D)(4)(a) and (b). The information submitted by the law school was reliable. *See* Gov.Bar R. I(11)(D)(4)(c). Indeed, Burch stipulated that the events had occurred, though she also sought to justify her conduct.

{¶ 22} On the surface, Burch's failure to comply with course attendance requirements and assignment deadlines and her unauthorized withdrawal from classes when faced with the prospect of a failing grade appear to harm no one but Burch. Burch claimed that she missed the deadline for one of her writing assignments because she "was not very comfortable with the side [she] was on." She explained, "I really wanted to be on the other side, in reality, probably the losing side, but it was the side I felt much stronger arguing from, personally." But in practice, a lawyer has a duty to diligently represent her clients regardless of their position in the case. Some of those clients will have what the attorney believes to be the weaker legal argument or will have positions that clash with the attorney's personal or political views. But an attorney cannot miss court deadlines simply because a case is difficult to prepare. Burch's inability or unwillingness to follow the rules when compliance was to her own benefit calls into question her ability to comply with the rules and meet deadlines for the benefit of others—particularly her clients—should she be admitted to the bar.

**{¶ 23}** Burch's pattern of reckless conduct is also reflected in her decision to sign her supervising attorney's name to several attorney-designation forms. Burch knew that as an intern, she was not authorized to sign an attorney's name to a document. Despite this knowledge, she testified that she signed the attorney's name because she wanted more responsibility and because it would save her from making a second trip to the courthouse. The attorney reported that Burch "generally completed her assigned tasks on time and in a satisfactory manner" and that she worked diligently. She attributed Burch's poor decisions to eagerness and enthusiasm and believed that she had learned from her mistakes. The panel and board, however, were not convinced—and neither are we.

**{¶ 24}** Burch's critical comments about the court process in an open courtroom and her failure to appreciate the impropriety of signing an attorney's name to a court document are serious because the Rules of Professional Conduct prohibit a lawyer both from engaging in undignified or discourteous conduct that is degrading to a tribunal and knowingly making a false statement of fact or law to a tribunal. *See* Prof.Cond.R. 3.5(a)(6) and 3.3(a)(1).

**{¶ 25}** Moreover, Burch's omission of the material fact that she had not completed the coursework for the previous semester when she sought permission to exceed the law school's credit-hour limit exhibits a disturbing lack of candor and maturity in her final semester of law school. We have stated that the practice of law is "a learned profession grounded on integrity, respectability, and candor." *See*, *e.g.*, *Disciplinary Counsel v. Claflin*, 107 Ohio St.3d 31, 2005-Ohio-5827, 836 N.E.2d 564, ¶ 14. If Burch is permitted to take the bar exam and achieves a passing score, she will have a duty of candor to her clients, her opposing counsel, and the courts. *See, e.g.*, *Akron Bar Assn. v. Dietz*, 108 Ohio St.3d 343, 2006-Ohio-1067, 843 N.E.2d 786, ¶ 20 (a lawyer owes duties of loyalty, integrity, and candor to the courts and his clients), and Prof.Cond.R. 1.4 (requiring a lawyer to reasonably consult with a client and to keep a client reasonably informed of a

matter), 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal or failing to correct a false statement of material fact or law previously made to the tribunal by the lawyer), 3.3(a)(2) (prohibiting a lawyer from knowingly failing to disclose to the tribunal controlling legal authority known to be directly adverse to the client's position and not disclosed by opposing counsel), 3.3(d) (requiring a lawyer in an ex parte proceeding to inform the tribunal of all material facts known to the lawyer, including adverse facts, that will enable the tribunal to make an informed decision), and 3.4(a) (prohibiting a lawyer from unlawfully obstructing another party's access to evidence or unlawfully altering, destroying, or concealing documents or other material having potential evidentiary value). Burch's lack of candor and, perhaps more importantly, her continuing failure to recognize that her incomplete coursework from a prior semester might be relevant to the dean's decision on her request to exceed the credit-hour limit demonstrate that she does not currently possess the level of candor that is essential to the practice of law.

{¶ 26} Although Burch has been candid with the admissions committee and the board, *see* Gov.Bar R. I(11)(D)(4)(i), has substantially complied with her OLAP contract, *see* Gov.Bar R. I(11)(D)(4)(g), and has excelled in her recent employment as an in-home tutor, *see* Gov.Bar R. I(11)(D)(4)(h), we agree with the board's assessment that these rehabilitation efforts and positive social contributions do not overcome the cumulative effect of Burch's errors in judgment during her law-school career. *See* Gov.Bar R. I(11)(D)(4)(f).

{¶ 27} Burch may have expressed *some* insight into her behavior and recognized that *some* of her actions—signing an attorney's name to a court document and making inappropriate comments in an open courtroom—may not have been proper. But she does not appreciate how her failure to attend class, the missed deadlines and withdrawal from several classes, and her failure to be

candid with the dean of her law school negatively reflect on her fitness to practice law.

**{¶ 28}** Burch's repeated attempts to excuse her conduct and deflect blame from herself with claims that she was treated too harshly, got on the wrong side of the wrong people, and was caught off guard by the law school's reporting of her conduct to the NCBE demonstrate that she does not yet possess the maturity to accept responsibility for her past conduct, to learn from her mistakes, or to make better choices in the future.

**{¶ 29}** Based upon the foregoing, we find that Burch has failed to prove that she currently possesses the requisite character, fitness, and moral qualifications for admission to the practice of law in Ohio. We therefore overrule Burch's objections, adopt the board's findings of fact, and disapprove Burch's application to take the July 2011 bar exam. She may apply to take the February 2013 bar exam by timely submitting a new application to take the bar examination in accordance with Gov.Bar R. I(3) and submitting an updated report from OLAP.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and McGEE BROWN, JJ., concur.

_____

Statman, Harris & Eyrich, L.L.C., and Michael R. Keefe, for applicant.

Buechner, Haffer, Meyers & Koenig Co., L.P.A., and Robert G. Hyland, for the Cincinnati Bar Association.

_____