DISCIPLINARY COUNSEL *v.* BURCHINAL.

[Cite as *Disciplinary Counsel v. Burchinal,*

133 Ohio St.3d 38, 2012-Ohio-3882.]

*Attorneys—Misconduct—Misappropriation of client funds but substantial mitigation—Partially stayed license suspension.*

(No. 2011-1426—Submitted November 2, 2011—Decided

August 29, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 11-020.

_____

**Per Curiam.**

**{¶ 1}** Respondent, Christopher James Burchinal of Delaware, Ohio, Attorney Registration No. 0071503, was admitted to the practice of law in Ohio in 1999. On February 1, 2011, relator, disciplinary counsel, filed a four-count complaint charging Burchinal with misappropriating funds on three occasions in violation of Prof.Cond.R. 1.15(c) (requiring a lawyer to deposit advance payments of fees and expenses in a trust account for withdrawal as fees are earned and expenses incurred), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h) (prohibiting conduct that reflects adversely on the lawyer's fitness to practice law). Additionally, the complaint charged a failure to file a civil complaint on behalf of clients within the statute of limitations and then deceiving his clients into believing he was settling the case, thereby violating Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence and promptness in representing a client), 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of the matter), and 8.4(h).

{¶ 2} A panel of the Board of Commissioners on Grievance and Discipline held a hearing on June 19, 2011, and after considering the testimony and exhibits and the parties' stipulations, the panel found that Burchinal had committed the charged misconduct. After its review of aggravating and mitigating circumstances and the parties' proposed sanctions, the panel recommended a two-year license suspension with 12 months stayed on the following conditions: that respondent serve the stayed suspension under monitored probation, that he cooperate with the attorney assigned by relator as the monitor for his reentry to practice, and that he complete his four-year contract with the Ohio Lawyers Assistance Program ("OLAP"). The board adopted the panel's findings of fact, conclusions of law, and recommendation.

{¶ 3} Burchinal filed objections to the board's recommendation, seeking a two-year suspension with 18 months stayed on conditions, including that Burchinal work with an attorney monitor. Relator responded by reiterating his support for the sanction that he had recommended: an 18-month license suspension with 12 months stayed on conditions. At oral argument, relator expressed support for respondent's suggested sanction of a two-year suspension with 18 months stayed on conditions.

{¶ 4} We overrule the board's recommendation and instead order that Burchinal be suspended from the practice of law for two years, with the final 18 months stayed on the following conditions: that Burchinal serve 18 months of monitored probation pursuant to Gov.Bar R. V(9) during the stay, that he cooperate with the attorney assigned by relator as the monitor for his reentry to practice, and that he complete his four-year OLAP contract.

**Misconduct**

*1. Background*

{¶ 5} After passing the bar, Burchinal worked for a personal-injury law firm and then worked for the city of Reynoldsburg and the Columbus city

attorney's office. Next, Burchinal worked at an insurance-defense firm. Dissatisfied at doing depositions but not trials, Burchinal pursued solo practice. He then joined the law firm that became Firestone, Brehm, Hanson, Wolf & Burchinal, L.L.P., in Delaware, where he worked from December 2004 to July 2010.

**{¶ 6}** At first serving at the firm as a partner in name only, with some input but no vote on finances or other partnership matters, Burchinal was elevated to full partner three months after joining the firm. As a full partner, Burchinal had to assume responsibility for $3,800 of monthly firm expenses. At the same time, his monthly home-mortgage payment was approximately $2,500, and child-care expenses approximated $4,000 a month. Over time, the burden of more than $10,300 a month in expenses was financially draining, and in some months, Burchinal did not earn enough to cover his bills.

*2. Misappropriation of funds*

**{¶ 7}** Burchinal's firm partners asked him to assist in personal-injury cases because they had little experience with such cases. Burchinal misappropriated funds in three cases. In 2007, he was to pay a subrogated medical expense of $6,141 as part of effectuating the settlement for his client, Molly Davis. Instead of paying the claim, Burchinal misappropriated this sum and paid his mortgage and his share of firm expenses with it.

**{¶ 8}** In the Getena Hartman case in 2008, $303.25 was owed to Riverside Methodist Hospital. Instead of disbursing the money to Riverside, Burchinal misappropriated it to pay his mortgage and other personal expenses.

**{¶ 9}** In 2009, in the Shannon Scott matter, Burchinal was to pay a $7,435.02 subrogated expense, and the insurance company issued a separate check for it. Instead of paying that claim, Burchinal misappropriated the money by having the client endorse the check. He then deposited it and used the money for personal expenses.

**{¶ 10}** With respect to the three counts of misappropriating funds, Burchinal stipulated violations of Prof.Cond.R. 1.15(c), 8.4(c), and 8.4(h).

*3. Neglect of a client matter and concealment*

**{¶ 11}** In the matter of James and Penny Robinson, Burchinal missed the 2008 statute-of-limitations deadline for their personal-injury lawsuit. Instead of informing his clients, for two years Burchinal told the clients that he was still negotiating with the insurance company. With respect to this count, Burchinal stipulated violating Prof.Cond.R. 1.3, 1.4(a)(3), and 8.4(h).

*4. Discovery, self-reporting, and restitution*

**{¶ 12}** In May 2010, one of his law partners confronted Burchinal about the unpaid Riverside Hospital bill. He admitted using the money to pay personal expenses and also revealed that he had misappropriated funds intended to pay the subrogation claims for Davis and Scott. Burchinal then reported his misconduct to relator.

**{¶ 13}** Right after being confronted, Burchinal paid the Riverside Hospital bill and the subrogation claims relating to the Davis and Scott matters. He also entered into a settlement with the Robinsons and signed a promissory note to pay them $17,000 as the value of their case and defray their $1,200 medical bill. Burchinal has fulfilled his obligations to the Robinsons.

*5. OLAP contract and psychological treatment*

**{¶ 14}** Also in May 2010, Burchinal sought assistance from OLAP and signed a four-year OLAP contract. OLAP clinical associate Megan Snyder testified that she conducted an alcohol, drug, and mental-health assessment on Burchinal and diagnosed adjustment disorder with mixed anxiety and depressed mood resulting from his financial stress. The OLAP contract requires Burchinal to pursue appropriate treatment by his physician and mental-health professionals, and Snyder has asked him to contact OLAP three times a week for support. Snyder testified that Burchinal has been open, cooperative, and compliant.

{¶ 15} In June 2010, Burchinal began mental-health counseling with Judith Fisher, a licensed independent social worker. Fisher testified that Burchinal had initially exhibited several symptoms of depression relating to financial stress exacerbated by his strong identity as breadwinner, but she testified that a year later, he had made progress by maintaining healthy habits, by reaching out to friends and family, and by participating in group therapy sessions. She offered her professional opinion that Burchinal's condition had impaired his rationality and judgment and had contributed to his misconduct. Fisher stated that Burchinal had "come out from under the symptoms that * * * had taken over," and she opined that he "could return to the practice of law in a competent, ethical, and professional manner."

### Disposition

#### 1. Aggravating and mitigating factors

{¶ 16} After finding that Burchinal had violated the Rules of Professional Conduct as stipulated, the panel made findings regarding aggravating and mitigating factors. As aggravating factors, the panel identified the presence of a selfish or dishonest motive as well as multiple offenses constituting a pattern of misconduct. See BCGD Proc.Reg. 10(B)(1)(b), (c), and (d). The panel noted as mitigating factors the absence of a prior disciplinary record, full disclosure and a cooperative attitude toward the disciplinary proceedings, and diagnosis by a qualified professional that mental illness contributed to his misconduct, but that he will be able to return to the competent and ethical practice of law. See BCGD Proc.Reg. 10(B)(2)(a), (d), (e), and (g).

#### 2. Sanction

{¶ 17} The presumptive sanction for misappropriation of client funds is disbarment. *Cleveland Bar Assn. v. Dixon*, 95 Ohio St.3d 490, 2002-Ohio-2490, 769 N.E.2d 816, ¶ 15. The presence of sufficient mitigating factors justifies our giving weight to a board recommendation of a lesser sanction. *Id.*; *Dayton Bar*

*Assn. v. Gerren*, 103 Ohio St.3d 21, 2004-Ohio-4110, 812 N.E.2d 1280, ¶ 14. But case law supports an actual suspension from the practice of law when extensive misconduct involves dishonesty that adversely reflects on the attorney's fitness to practice law. *Toledo Bar Assn. v. Miller*, 132 Ohio St.3d 63, 2012-Ohio-1880, 969 N.E.2d 239, ¶ 13.

{¶ 18} The parties agree that the facts support a two-year license suspension with 18 months of the suspension stayed. This disposition accords with our cases in two respects.

{¶ 19} First, multiple acts of dishonesty require an actual suspension from the practice of law. *Miller*, ¶ 13. Second, Burchinal offered mitigating evidence, such as the absence of a disciplinary record, full cooperation with the disciplinary process, letters attesting to his diligence and good character, and a documented mental impairment that is being treated with good prognosis. *See Disciplinary Counsel v. Claflin*, 107 Ohio St.3d 31, 2005-Ohio-5827, 836 N.E.2d 564, ¶ 12, 15; *Disciplinary Counsel v. Poley*, 94 Ohio St.3d 425, 427, 763 N.E.2d 1163 (2002); *Cleveland Bar Assn. v. Mishler*, 118 Ohio St.3d 109, 2008-Ohio-1810, 886 N.E.2d 818, ¶ 46; *Disciplinary Counsel v. Kraemer*, 126 Ohio St.3d 163, 2010-Ohio-3300, 931 N.E.2d 571, ¶ 8, 15.

{¶ 20} We therefore order that Burchinal be suspended from the practice of law for two years, with the final 18 months of the suspension stayed on the following conditions: that Burchinal commit no further misconduct, that he serve 18 months of monitored probation pursuant to Gov.Bar R. V(9) during the stayed portion of the suspension, that he cooperate with the monitoring attorney assigned by relator, and that he complete his four-year OLAP contract. If Burchinal violates these conditions, the stay will be lifted, and he will serve the full two-year suspension.

{¶ 21} Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Heather Coglianese, Assistant Disciplinary Counsel, for relator.

Bricker & Eckler L.L.P., and Alvin E. Mathews Jr., for respondent.

_____