**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cincinnati Bar Assn. v. Damon,* **Slip Opinion No. 2014-Ohio-3765.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-3765

CINCINNATI BAR ASSOCIATION *v*. DAMON.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cincinnati Bar Assn. v. Damon,* Slip Opinion No. 2014-Ohio-3765.]**

*Attorney misconduct—Violations of the Rules of Professional Conduct, including conviction of a felony, failing to act with reasonable diligence in representing a client, failing to maintain client funds in a separate account and to render a full accounting of a client's funds, and failing to consult with a client as to the means of pursuing the objectives of representation— Permanent disbarment.*

(No. 2013-1984—Submitted May 28, 2014—Decided September 3, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2011-046.

_____

**KENNEDY, J.**

**{¶ 1}** Respondent, Geoffrey Parker Damon of Independence, Kentucky, Attorney Registration No. 0029397, was admitted to the practice of law in Ohio in

1984. On May 21, 2013, we suspended his license to practice law on an interim basis following his March 11, 2013 felony conviction for theft. *In re Damon*, 135 Ohio St.3d 1311, 2013-Ohio-2032, 988 N.E.2d 570.

{¶ 2} On April 19, 2011, relator, Cincinnati Bar Association, filed a complaint charging Damon with violations of the Rules of Professional Conduct arising from the conduct that led to his felony conviction. The complaint was amended on July 18, 2011, December 29, 2011, and April 12, 2013. On April 9, 2012, the parties filed comprehensive stipulations of fact. Supplemental stipulations of fact were filed by the parties on May 29, 2012. A hearing was held on June 11, 2013, before a panel of the Board of Commissioners on Grievances and Discipline.

{¶ 3} The panel unanimously accepted the stipulated facts. After considering those facts, the testimony of the witnesses, including respondent's testimony, and all the admitted exhibits, the panel found that some of the violations alleged in the complaint had been established by clear and convincing evidence, but others had not, and it recommended dismissal of those allegations that had not been established. The panel recommended that Damon be disbarred.

{¶ 4} The board considered this matter on December 13, 2013. The board adopted the panel's report and recommendation in its entirety. Damon filed objections to the board's findings of fact and conclusions of law and the recommended sanction of disbarment.

{¶ 5} Upon consideration of the allegations for which the board found no violation, we agree with the board and dismiss those allegations. For the reasons that follow, we overrule Damon's objections, adopt the board's findings of fact and conclusions of law, and conclude that disbarment is the appropriate sanction in this case.

**Misconduct**

*Factual Findings of the Panel and the Board*

**Butkovich & Crosthwaite Company, L.P.A.**

{¶ 6} On January 1, 2009, Damon became employed as a full-time associate by the law firm of Butkovich & Crosthwaite Company, L.P.A., in Cincinnati, Ohio. In return for an annual salary, Damon agreed to remit to the firm all the fees he would earn during his employment, whether from work in progress before joining the firm or from new client matters undertaken after January 1, 2009.

{¶ 7} Notwithstanding this agreement, Damon accepted payments from clients and deposited those funds into his own trust account, rather than into the firm's trust account. Damon did not report or remit any of these receipts to Butkovich & Crosthwaite. The exact amount stolen from the law firm is unknown. However, Damon declared approximately $84,000 in gross receipts for the "Damon Law Office" on his 2009 federal tax filings.

{¶ 8} After he was no longer employed by the firm, Damon began making restitution to the firm. The parties stipulated that he had paid approximately $55,000 to the law firm.

**Terry and Veronica Patterson**

{¶ 9} Terry and Veronica Patterson paid Damon an initial retainer of $5,000 when Damon began representing them in a legal-malpractice claim in December 2008. A written fee contract was not executed in this matter. In July 2009, the Pattersons paid him an additional $3,700 for an expert witness. In December 2009, Damon dismissed the lawsuit. Damon failed to provide an accounting as requested by the clients and failed to return the $3,700 that was never used for an expert.

**Lisa Thompson**

{¶ 10} In April 2008, Lisa Thompson hired Damon to represent her in a disability-discrimination law suit against the University of Louisville College of Law and the Law School Admission Council ("LSAC"). She paid Damon a $5,000 retainer.

{¶ 11} Over a year later, and more than a year after the law school and LSAC had granted Thompson the requested accommodation, Damon filed a lawsuit in federal court under the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 et seq., and state civil-rights statutes. At that time, the only viable cause of action under the ADA was for the attorney fees that Thompson had paid in obtaining the accommodation. The complaint, however, did not include a claim for those attorney fees or an allegation that the client was damaged by having to pay such fees. When the defendants in the action threatened sanctions against Thompson for filing a frivolous complaint, Damon dismissed it with prejudice. Damon has not refunded any money to Thompson. Damon kept neither an itemized record of Thompson's funds nor records of the time that he spent on the case.

**Timothy Robinson**

{¶ 12} Around December 2008, Timothy Robinson hired Damon to file a legal-malpractice claim on his behalf. Robinson paid Damon a total of $25,000, which consisted of a $10,000 retainer and $15,000 for expenses.

{¶ 13} On March 18, 2009, Damon filed the action. He dismissed the suit without prejudice when he could not find an expert witness to support the malpractice claim. Damon has not refunded any of Robinson's money. Damon did not keep itemized records of Robinson's funds or of the time that he spent on the case.

**Mose Jemison**

{¶ 14} In July 2010, Mose Jemison hired Damon to represent him in a worker's compensation retaliation claim and paid Damon a $1,500 retainer. Damon failed to file an action, and Jemison discharged Damon in November 2010. Damon refunded $500 of Jemison's money but failed to account for either the remainder of the funds or the time that he spent on the case.

**Stephen Johnson**

{¶ 15} In April 2009, Damon undertook to represent Stephen Johnson in an employment-discrimination action. Johnson paid Damon an initial retainer, but the amount paid is disputed; the remainder of the fee was contingent upon an award of attorney fees by the court. Damon failed to enter into a written fee agreement with Johnson.

{¶ 16} On November 12, 2009, Damon filed a complaint on Johnson's behalf. The defendant filed a motion for summary judgment. Instead of filing a memorandum in opposition, Damon filed a voluntary dismissal of the case without prejudice. Damon has no time records for this matter and has not returned any of the money that Johnson paid him.

**Michael Long**

{¶ 17} Prior to hiring Damon, Michael Long had filed suit against Long's former union, the United Auto Workers ("UAW"), and summary judgment had been entered in favor of the UAW. The time for appeal had run months before Long hired Damon. In September 2008, Damon undertook the representation of Long in two separate but related suits against the UAW and his former employer, General Motors Corporation ("GM"). Long paid Damon a $2,500 flat fee to represent him in the UAW matter and $5,000 to represent him in the GM matter.

{¶ 18} On January 20, 2009, Damon filed a motion to vacate the summary judgment issued in favor of the UAW. The UAW filed a memorandum opposing the motion to vacate judgment and also sent a letter to Damon stating that if

Damon did not withdraw the motion within 21 days, the union would file a motion for sanctions. Damon withdrew the motion to vacate. Damon has not provided an accounting of either the $2,500 fee or of the time he spent on the matter.

{¶ 19} On October 29, 2009, knowing that GM had filed for bankruptcy on June 2, 2009, Damon filed a complaint against "Motors Liquidation Company FKA General Motors Corp." in the Warren County Common Pleas Court. Damon was advised by GM's counsel that any claim against GM would have to be pursued in the bankruptcy proceedings. Damon took no further action on the complaint, and the action was dismissed without prejudice for lack of prosecution on July 9, 2010. Damon has failed to produce records of the time that he spent on the GM lawsuit and has failed to either account for or refund any of the $5,000 retainer.

**Lori Gehring**

{¶ 20} On April 6, 2011, Lori Gehring hired Damon to represent her in a medical-malpractice claim. At that time, Gehring paid Damon $1,500 for consultation with and review of her records by a medical professional.

{¶ 21} Notwithstanding Damon's representations that her medical records would be sent to a nurse practitioner for review, he did nothing with the records for almost four months. Upon learning this, Gehring requested, on two separate occasions, a return of her medical records and the retainer. Damon failed to refund Gehring's retainer. Moreover, he returned Gehring's medical files only after he received a letter from relator's investigator regarding this grievance.

**Valerie DuBose**

{¶ 22} In August 2009, Valerie DuBose hired Damon to represent her in an employment matter. She paid Damon a total of $4,800. The defendants in the action filed a motion for summary judgment. Damon filed a memorandum in opposition only after the trial court issued an order requiring Damon to either file

the memorandum in opposition or show cause why the matter should not be dismissed for lack of prosecution. At the oral argument on the motion for summary judgment, Damon voluntarily dismissed the case without prejudice, without discussing the dismissal with DuBose. Shortly thereafter, DuBose learned that her case had been dismissed, and she terminated her relationship with Damon. Damon provided neither an accounting of DuBose's funds nor of the time that he spent in representing her.

**Criminal Conviction**

{¶ 23} Damon entered a plea of guilty on March 11, 2013, in the Hamilton County Court of Common Pleas to grand theft, a felony of the fourth degree. The offense involved the theft of fees from Butkovich and Crosthwaite. On April 4, 2013, the court sentenced Damon to three years' community control, with a prison term of 12 months to be imposed if he violated the terms and conditions of that control. Damon was further ordered to pay restitution to the law firm in the amount of $59,553.98. This amount is in addition to the more than $55,000 Damon has already paid.

*Damon's Objections to Factual Findings*

{¶ 24} Damon objects to the board's findings with regard to restitution. He contends that the board ignored the stipulation regarding the amount taken from the law firm and instead found that the exact amount stolen from the firm was unknown and could not be ascertained. Damon contends that Joseph Butkovich testified that they had arrived at a final restitution figure. Damon argues that there was a finite number of clients that he represented while employed by the law firm and that his cases were a matter of record.

{¶ 25} Butkovich testified that Damon provided "some of his bank records." Additionally, during questioning by Damon, Butkovich responded, "[Y]ou don't have records for us to make an accounting. And it doesn't account for the cash payments that you received that we have no idea who and when

retained you because you didn't inform us of your clients. So, I can't tell you what you owe us because you don't have records."

{¶ 26} "Unless the record weighs heavily against a hearing panel's findings, we defer to the panel's credibility determinations, inasmuch as the panel members saw and heard the witnesses firsthand." *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24; *see also Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 8. Therefore, we defer to the panel's reasonable decision to credit Butkovich's testimony that Damon had not provided records from which the exact amount of funds stolen could be calculated.

{¶ 27} In light of the above, we overrule Damon's objection and adopt the board's factual findings.

*Findings of Misconduct*

{¶ 28} The board found by clear and convincing evidence that Damon violated Prof.Cond.R. 1.15(a)(2) (a lawyer shall not fail to maintain a record of client funds) in his representation of Thompson, Robinson, and Jemison; 1.15(d) (a lawyer shall not fail to render a full accounting of a client's funds upon request by the client) in his representation of the Pattersons, Thompson, Robinson, Jemison, Johnson, Long, Gehring, and DuBose; 1.2(a) (a lawyer shall not fail to consult with a client as to the means of pursuing the objectives of representation), 1.3 (a lawyer shall not fail to act with reasonable diligence and promptness in representing a client), 1.4(a) (a lawyer shall not fail to inform a client of a decision or circumstance with respect to which the client's informed consent is required), and 1.4(b) (a lawyer shall not fail to explain the nature of the representation to permit the client to make informed decisions regarding that representation) in his representation of DuBose; 1.5(a) (a lawyer shall not charge or collect a clearly excessive fee) in his representation of Thompson, Long, and Gehring; 1.5(c) (a lawyer shall not enter into a contingent-fee agreement without

a written fee contract signed by the client and the lawyer) in his representation of Johnson; 1.15(e) (a lawyer shall not fail to maintain legal fees and expenses that had been paid in advance in a client's trust account until the fees are earned or the expenses incurred) in his representation of the Pattersons; 8.4(c) (prohibiting an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) by misappropriating funds from Butkovich and Crosthwaite; and 8.4(b) (prohibiting an attorney from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness) due to his criminal conviction.

{¶ 29} We adopt the board's findings of misconduct.

**Sanction**

{¶ 30} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. However, because each disciplinary case is unique, we are not limited to the factors specified in BCGD Proc.Reg. 10(B) but may take into account all relevant factors in determining which sanction to impose.

{¶ 31} The panel and the board found as aggravating factors that Damon acted dishonestly or with a selfish motive, engaged in a pattern of misconduct, committed multiple offenses, failed to cooperate in the disciplinary process by refusing to answer specific questions or giving evasive answers, refused to acknowledge the wrongful nature of his conduct, took advantage of clients who were vulnerable and caused harm to clients, and failed to make restitution voluntarily. *See* BCGD Proc.Reg. 10(B)(1)(b), (c), (d), (e), (g), (h), and (i).

{¶ 32} The panel and the board found the following mitigating factors. First, Damon has not been previously disciplined. *See* BCGD Proc.Reg. 10(B)(2)(a). "Our precedent indicates that a prior interim felony suspension has not heretofore been considered as a prior disciplinary offense." *Disciplinary Counsel v. Cantrell,* 130 Ohio St.3d 46, 2011-Ohio-4554, 955 N.E.2d 950, ¶ 16, citing *Disciplinary Counsel v. Ulinski,* 106 Ohio St.3d 53, 2005-Ohio-3673, 831 N.E.2d 425, ¶ 1 and 14. Damon has also demonstrated that aside from the present matter, he has a reputation in the community for being of good character. *See* BCGD Proc.Reg. 10(B)(2)(e). Finally, Damon has received other penalties or sanctions. *See* BCGD Proc.Reg. 10(B)(2)(f).

{¶ 33} Damon contends that the board ignored as a mitigating factor that he had fully cooperated with Butkovich and Crosthwaite and that he has made significant restitution, having paid over $55,000 to the law firm. Instead, Damon argues, the board erroneously found in aggravation that he demonstrated a lack of cooperation in the disciplinary process and that the amount of monies misappropriated could not be calculated. Further, Damon asserts that the board failed to give him any credit for remorse.

{¶ 34} As stated above, Butkovich testified that the firm was unable to complete an accounting because Damon did not have the appropriate records. Moreover, Damon did not make a timely, good-faith effort toward restitution. Damon did begin making restitution to the law firm upon his termination. However, this was only after the firm had discovered Damon's theft and demanded restitution. Further, Damon filed for Chapter 13 bankruptcy and listed the law firm and the aggrieved clients as creditors. Although the bankruptcy was dismissed because Damon was unable to make the payment required by the plan, by pursuing it, Damon attempted to either eliminate or lessen some of these obligations. Finally, Damon has refused to acknowledge the wrongfulness of his actions. To the contrary, he expresses the belief that he had no duty to return

unearned fees unless the client asked for them. Accordingly, we reject Damon's arguments.

{¶ 35} Damon also objects to the recommendation that he be disbarred. Damon argues that his efforts toward restitution, his fully cooperative attitude, including the production of financial documents to the law firm, and his lack of a prior disciplinary record warrant an indefinite suspension.

{¶ 36} We conclude that disbarment is the appropriate sanction under the circumstances. We have held that in most instances, "[t]he continuing public confidence in the judicial system and the bar requires that the strictest discipline be imposed in misappropriation cases." *Cleveland Bar Assn. v. Belock*, 82 Ohio St.3d 98, 100, 694 N.E.2d 897 (1998). Damon committed two distinct courses of misconduct, each of which carry the presumption of disbarment. First, Damon was convicted of theft for misappropriating funds from his employer. We have determined that disbarment is warranted when an attorney is convicted of theft offenses. *See, e.g., Cincinnati Bar Assn. v. Banks,* 94 Ohio St.3d 428, 763 N.E.2d 1166 (2002) (attorney convicted of interstate transportation of stolen laptop computers disbarred for violations of former DR 1-102(A)(3) [a lawyer shall not engage in illegal conduct involving moral turpitude], (4) [a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation], and (5) [a lawyer shall not engage in conduct that is prejudicial to the administration of justice]).

{¶ 37} Second, we have recognized that accepting legal fees but failing to carry out contracts of employment is tantamount to theft of the fee from the client and that the presumptive sanction for that offense is disbarment. *See, e.g., Columbus Bar Assn. v. Moushey*, 104 Ohio St.3d 427, 2004-Ohio-6897, 819 N.E.2d 1112, ¶ 16, citing *Disciplinary Counsel v. Sigall*, 14 Ohio St.3d 15, 17, 470 N.E.2d 886 (1984), and *Disciplinary Counsel v. France*, 97 Ohio St.3d 240, 2002-Ohio-5945, 778 N.E.2d 573, ¶ 11. Damon knowingly accepted and kept

retainers that were intended to be used for pursuing claims that he knew or should have known were frivolous. He also accepted a $2,500 retainer from Long for a claim that he should have known was meritless. The same is true with respect to the action he filed for Thompson in federal court. Second, he took fees from clients and failed to do any work. Gehring paid him $1,500, he did nothing, and he failed to return any of the money. Robinson paid him $25,000, but he failed to account for his work and failed to return any of the money.

{¶ 38} Further, the harm caused by Damon goes beyond the sum of money he stole from the law firm and the fees he has yet to return to his clients. The law firm spent more than $60,000 in an attempt to calculate the amount Damon stole and to defend malpractice suits filed against the firm arising from Damon's misconduct. Additionally, as a result of Damon's misconduct, the firm suffered increased unemployment-compensation expenses, a 40 percent increase in its malpractice-insurance premiums, and a reduction in work force and was forced to spend countless hours dealing with disgruntled clients.

{¶ 39} Finally, Damon relies upon a number of cases in support of his argument for an indefinite suspension. However, these cases are distinguishable. For example, in *Cincinnati Bar Assn. v. Britt,* 133 Ohio St.3d 217, 2012-Ohio-4541, 977 N.E.2d 620, which was cited by Damon at the hearing, the wrongdoing engaged in and the rules violated by Curtis Britt parallel Damon's wrongdoing and violations. However, Britt was not charged with or convicted of a crime, and the mitigating evidence in Britt's case exceeds that presented by Damon. Further, his conduct was not dishonest or selfish. *Id.* at ¶ 27. Instead, "[i]t was born of his inexperience and lack of guidance * * *." *Id.* Additionally, Britt, in a letter to each of the affected clients, openly acknowledged his misconduct, sincerely apologized, and made arrangements for substitute counsel for his clients if they decided to accept it. *Id.* at ¶ 30-32. Moreover, in contrast to Damon, Britt provided documentation indicating the amount of money he had accepted from

his clients, which allowed for an accurate calculation of the amount misappropriated. *Id.* at ¶ 13. Finally, Britt "expressed both his remorse and his desire to make amends for his misconduct." *Id.* at ¶ 33.

{¶ 40} Accordingly, we find that the aggravating facts significantly outweigh the mitigating factors present in this case. Therefore, we overrule Damon's objection to the recommended sanction and adopt the board's recommendation of disbarment.

{¶ 41} This court hereby disbars Damon from the practice of law. Costs are taxed to Damon.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, FRENCH, and O'NEILL, JJ., concur.

————————————

Robert J. Hollingsworth, E. Hanlin Bavely, and Edwin W. Patterson III, for relator.

Reminger Co., L.P.A., and Joseph W. Borchelt, for respondent.

————————————