**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Burchinal*, **Slip Opinion No. 2021-Ohio-774.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-774

DISCIPLINARY COUNSEL *v*. BURCHINAL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Burchinal*, Slip Opinion No. 2021-Ohio-774.]**

*Attorneys—Misconduct—Multiple violations of the professional-conduct rules, including misappropriating client funds and continuing to practice law while license suspended—Several aggravating factors, including prior disciplinary offenses and causing harm to vulnerable clients—Permanent disbarment.*

(No. 2020-1206—Submitted January 13, 2021—Decided March 17, 2021.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-049.

_____

**Per Curiam.**

{¶ 1} Respondent, Christopher James Burchinal, of Delaware, Ohio, Attorney Registration No. 0071503, was admitted to the practice of law in Ohio in 1999.  In August 2012, we suspended him from the practice of law for two years

with 18 months stayed on conditions for misappropriating client funds in three matters and missing the statute-of-limitations deadline in a fourth client matter and then deceiving the clients in the fourth matter for two years, telling them that he was still negotiating with the insurance company. *Disciplinary Counsel v. Burchinal*, 133 Ohio St.3d 38, 2012-Ohio-3882, 975 N.E.2d 960. We have twice suspended him, albeit briefly, for his failure to timely register as an attorney. *See In re Attorney-Registration Suspension of Burchinal*, 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671, and 157 Ohio St.3d 1472, 2019-Ohio-4529, 134 N.E.3d 183.

{¶ 2} Relator, disciplinary counsel, filed the underlying complaint against Burchinal in October 2018 and amended it in January 2019. A three-member panel of the Board of Professional Conduct was appointed to hear the case, and in August 2019, the panel chair stayed the proceedings following Burchinal's indictment on two felony counts arising from the conduct at issue in Count I of relator's complaint. Following Burchinal's felony-theft conviction, the panel chair lifted the stay, and on March 5, 2020, we imposed an interim suspension on his license to practice law. *In re Burchinal*, 160 Ohio St.3d 1205, 2020-Ohio-791, 153 N.E.3d 124.

{¶ 3} In a seven-count second amended complaint filed on March 17, 2020, relator charged Burchinal with misconduct arising from his felony-theft conviction and with neglecting three other client matters, making false statements to three tribunals, and failing to cooperate in the disciplinary process. The parties filed comprehensive stipulations in which Burchinal admitted that he had committed all 37 of the charged rule violations, but the parties did not agree on the appropriate sanction.

{¶ 4} After a hearing, the panel issued a report largely adopting the parties' stipulations of fact, misconduct, and aggravating and mitigating factors. Citing Burchinal's consistent pattern of lying to his clients, judges, opposing

counsel, and disciplinary authorities, the panel recommended that he be permanently disbarred from the practice of law in Ohio. The board adopted the panel's report in its entirety. Burchinal objects to the recommended sanction and argues that despite having engaged in serious misconduct, he deserves a second chance to rehabilitate himself and that an indefinite suspension will adequately protect the public from future harm.

{¶ 5} We overrule Burchinal's objections and permanently disbar him from the practice of law in Ohio.

**Facts and Misconduct**

*Count I: Theft from an Incompetent Client and Other Misconduct in the Representation of that Client*

{¶ 6} In November 2016, the Delaware County Court of Common Pleas appointed Burchinal to represent B.C. in a criminal matter. Burchinal filed a motion for a psychiatric evaluation to determine whether B.C. was competent to stand trial. The court granted that motion and released B.C. from jail on a surety bond.

{¶ 7} On December 29, Burchinal approached B.C. and asked to borrow $8,000, claiming that he was short on funds after incurring significant medical expenses. He did not inform B.C. of the terms of the loan or advise him to seek independent counsel. B.C. wrote a check for $8,000, and Burchinal cashed it. The next day, the trial court declared B.C. incompetent to stand trial. Burchinal nevertheless continued to borrow additional funds from B.C.; he owed B.C. $19,200 by the end of January 2017.

{¶ 8} In February 2017, B.C.'s bond was revoked and he was confined to a psychiatric facility. He asked Burchinal to assist him with paying his bills and gave him several checks signed in blank for that purpose. Over the following two months, Burchinal used three of those checks to obtain $10,000 of B.C.'s funds for his own benefit. He also issued a $5,000 check to B.C. from his own account

as partial repayment of the original loan, though Burchinal's account held just $1,030.17. By the time the check was presented for payment in early May 2017, the bank had closed Burchinal's account due to a negative balance, so it refused to honor the check.

{¶ 9} On May 4, Burchinal visited B.C. at the psychiatric facility and falsely claimed that he needed $6,500 to hire an investigator to assist him with B.C.'s criminal cases. Eight days later, he requested another $1,850. Each time, B.C. gave Burchinal a check for the requested amount. Burchinal took those checks, wrote "Investigator" on the memo line, cashed them, and used the funds for his own benefit. Later that month, he used another check that B.C. had signed in blank to take an additional $3,750 for himself under the guise of paying an investigator.

{¶ 10} By May 15, Burchinal had misappropriated $22,100 in addition to the $19,200 he had borrowed from B.C. The court released B.C. from the psychiatric facility later that month upon finding that his competency had been restored. Shortly after his release, B.C. discovered that Burchinal had misappropriated funds, but erroneously believed that he had taken only $7,300 beyond the loan.

{¶ 11} In June 2017, B.C. requested that Burchinal repay the loan and return the misappropriated funds. In response, Burchinal executed a promissory note for $26,500—$14,800 less than he had actually misappropriated—in which he agreed to make monthly payments of $2,500 until the debt was paid, with no interest. He made just one $2,500 payment before B.C. discovered the true extent of his misappropriation and confronted him. In July 2017, Burchinal prepared and signed a second promissory note, this one agreeing to repay the entire $41,300, again with no interest and in monthly payments of $2,500. In August, he made a partial monthly payment of $1,500. In December 2017, he offered to transfer two motor-vehicle titles to B.C. as a partial payment on the debt, but B.C.

rejected the offer when Burchinal admitted that the vehicles were encumbered by bank liens. Burchinal made a $17,000 payment to B.C. later that month, and paid the remaining principal and interest in October 2018.

{¶ 12} Burchinal was indicted in August 2019 for his theft from B.C. He pleaded guilty to a fourth-degree-felony count of theft, and the prosecutor dismissed a charge of passing bad checks. On February 24, 2020, Burchinal was sentenced to ten days in jail, one to five years of community control, and 50 hours of community service, and was ordered to pay court costs.

{¶ 13} In January 2018, relator sent an initial letter of inquiry to Burchinal regarding his representation of B.C. Burchinal requested two extensions of time to respond but failed to submit his response by the promised date. Relator subpoenaed him for a deposition, but when Burchinal falsely represented that his response and supporting documentation were in the mail, relator canceled the deposition. Burchinal never responded to the letter of inquiry.

{¶ 14} The parties stipulated and the board found that Burchinal's conduct violated Prof.Cond.R. 1.8(a) (prohibiting a lawyer from entering into a business transaction with a client unless the client is advised in writing of the desirability of obtaining independent legal counsel and the terms of the transaction are fair, reasonable, and fully disclosed in a writing signed by the client), 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter), 8.1(b) and Gov.Bar R. V(9)(G) (both prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation), Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). The board also adopted the parties' stipulation that Burchinal's misappropriation of funds from a vulnerable client was sufficiently egregious to warrant a separate

finding that he violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500.

*Counts II, III, and VI: Dishonesty, Neglect, Failure to Reasonably Communicate, and Other Misconduct in the Representation of Three Clients*

{¶ 15} Burchinal failed to act with reasonable diligence in his representation of Monica Poole, Angela Riley, and Omar Gutierrez. Although these clients repeatedly reached out to Burchinal for information regarding the status of their cases, he often failed to return their calls or respond to their text messages.

{¶ 16} When Burchinal *did* respond to communications from these clients, he repeatedly lied to them. He either claimed that he had performed (or would soon perform) the requested services or fabricated excuses for not having done so. He blamed his court schedule and his secretary for his failure to file some documents.

{¶ 17} In the Poole matter, Burchinal claimed that the probate court had wrongly rejected his filings—though he ultimately stipulated that those documents had properly been rejected because they contained errors. In the Riley matter, he told his client that he had reached out numerous times to the insurer that was handling her personal-injury claim, and he suggested that the insurer was causing the delay in settling her claim. (He later admitted that he had failed to respond to the insurer's communications.) He then asked Riley for a $210 filing fee so he could file a complaint. She gave him the money, and over the next several weeks, he repeatedly made excuses for why he had not yet filed the complaint.

{¶ 18} Burchinal never filed Poole's or Riley's case. He ceased communicating with Poole in June 2018 and did not refund her $588 flat fee until

the day before his June 2020 disciplinary hearing. He alternated between ignoring Riley's requests for a refund of her filing fee and the return of her file and falsely representing that he would comply with those requests. Although he eventually refunded $250 to her ($40 more than she had paid), he never returned her file.

{¶ 19} In the Gutierrez matter, Burchinal timely filed a notice of appeal of Gutierrez's criminal sentence, but the appeal was dismissed on July 2, 2018, because Burchinal never filed an appellate brief. When Gutierrez's wife, Carmen Suarez, inquired about the dismissal a few days later, Burchinal lied and told her that he had received a 40-day extension to file the brief and that he would check with the court to see why the extension did not appear on its online docket. He later falsely told Suarez that he had spoken with the court about correcting the docket and that he expected to have a new deadline soon.

{¶ 20} On a Friday in September 2018, Burchinal told Suarez that he had completed the brief in Gutierrez's case and that after he put the finishing touches on it over the weekend, he would "file it Monday." More than a week later, Suarez asked whether Burchinal had filed the brief and sent Gutierrez a copy. Burchinal falsely implied that the brief had been filed by responding, "I do not think a copy has been sent to him but I will make sure that he gets one." He continued to lie to Suarez, stating that he had gone to visit Gutierrez at the prison but had been unable to see him because prison officials had double-booked the visitation room, when he had never actually gone to the prison. And when Suarez asked him to give her the name of another attorney, he claimed that he was drafting a petition for postconviction relief (which a public defender had advised Burchinal was the best option for the issue in the case) and would file it within the week, but he has stipulated that he did not prepare such a petition. Burchinal promised to forward Gutierrez's file and transcripts to new counsel, but he never did. Gutierrez's efforts to reopen his appeal were unsuccessful.

{¶ 21} Burchinal received relator's letters of inquiry regarding all three of these matters. He did not respond to relator's inquiries regarding Poole and Riley. And although he twice submitted information regarding the Gutierrez matter, he did not comply with relator's additional requests for information regarding that case.

{¶ 22} The parties stipulated and the board found that Burchinal committed three violations of Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 8.1(b), and 8.4(c) and Gov.Bar R. V(9)(G). They also agreed that Burchinal's conduct in the Poole and Gutierrez matters violated Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and that his failure to return the Riley and Gutierrez files violated Prof.Cond.R. 1.16(d) (requiring a lawyer to promptly deliver client papers and property as part of the termination of representation).

*Counts IV, V, and VII: False Statements to Three Tribunals and Other Misconduct in the Representation of Three Clients*

{¶ 23} Burchinal made false statements to three separate tribunals and engaged in other misconduct while representing Robert Clay, Aaron Piendl, and Robert Garcia.

{¶ 24} Clay, who hired Burchinal to represent him in a criminal matter, gave Burchinal $1,200 in cash at some point between his plea hearing and his sentencing hearing. Burchinal did not deposit the money into his client trust account. At Clay's sentencing hearing on November 20, 2017, the court ordered him to serve two years of community control, pay a $500 fine, and make restitution of $1,001.09 by December 2, 2017. At that hearing, Burchinal falsely stated, "I actually have $1,200 of Mr. Clay's sitting in my trust account * * *, so

that restitution could be paid almost immediately." Burchinal, however, had only $10.69 in his trust account, and he did not pay the restitution to the clerk's office.

{¶ 25} Nearly a year later, Clay's probation officer questioned Clay about his restitution, which remained unpaid, and Clay explained that he had given the money to Burchinal before his sentencing. The parties stipulated that if Clay had been called as a witness at Burchinal's disciplinary hearing, he would have testified that when he contacted Burchinal about the missing payment, Burchinal falsely stated that he had sent a check to the court but it had never been cashed. On November 9, 2018, Burchinal presented a $1,001.09 cashier's check to the clerk of court on Clay's behalf.

{¶ 26} In June 2019, Burchinal advised the panel in his disciplinary case that because he was being investigated for criminal theft, he was willing to wind down his practice and register his license inactive by September 1, 2019. Based on that representation, and with relator's agreement, the panel chair stayed the disciplinary case against Burchinal until his criminal case was resolved.

{¶ 27} On September 26, 2019, shortly before an extradition hearing at which Burchinal was to represent Aaron Piendl, the prosecutor discovered that Burchinal was listed as "Not registered" on the online attorney directory and confirmed that fact with the Office of Attorney Services. Upon arriving at the courthouse for the arraignment, Burchinal spoke with Piendl but did not advise him of his attorney-registration status. When the judge inquired whether Burchinal was permitted to represent Piendl, Burchinal stated that he was. He explained that because of a pending disciplinary complaint against him, he had reached an agreement with relator that allowed him to wrap up his practice and register his license inactive by October 1, 2019. The judge printed off the disciplinary case docket and informed Burchinal that the agreement actually required him to register his license inactive by September 1, 2019. Burchinal

replied, "Oh. Okay," and the judge removed him from the case. Piendl proceeded pro se and waived extradition.

{¶ 28} A few months later, Burchinal agreed to represent Garcia in a probation-violation case. He did not inform Garcia that his law license was under suspension for his failure to register as an attorney for the 2019/2021 biennium.

{¶ 29} Burchinal did not appear at a December 9, 2019 hearing in Garcia's case until after the court called to inquire regarding his whereabouts. In open court, Burchinal informed the judge that he was in the process of winding down his practice and closing his office and that he was also "in the process of helping [Garcia] with a domestic issue." He stated that he could "stand-in" for Garcia because he did not want him to be unrepresented. At that point, the judge stated that he was aware of Burchinal's disciplinary proceedings and that he was also aware that Burchinal was under an attorney-registration suspension. The judge asked him to clarify his status and said he was uncomfortable going forward with the proceedings while the Supreme Court's website indicated that he was suspended. Burchinal responded by falsely telling the court that he had submitted his paperwork and fees for reinstatement but that the Supreme Court had not timely processed the documents or reinstated him to the practice of law. He explained, "[L]ike you, I'm uncomfortable. Even though I know I've done everything they told me to do, I would agree with the Court, the website says exactly what Your Honor saw."

{¶ 30} Burchinal requested and received a short continuance to allow him to confirm that his registration was in order. The next day, Burchinal submitted his registration form and a $650 check to the Office of Attorney Services. Two weeks later he appeared on Garcia's behalf and completed the representation.

{¶ 31} The parties stipulated and the board found that Burchinal's conduct in the Clay, Piendl, and Garcia cases violated Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal),

and that his conduct in the Piendl and Garcia cases was prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(d). They also agreed that his conduct in Clay's case violated Prof.Cond.R. 1.15(c) (requiring a lawyer to deposit into a client trust account legal fees and expenses that have been paid in advance) and 8.4(c), and that his conduct in Garcia's case violated Prof.Cond.R. 5.5(a) (prohibiting a lawyer from practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction).

### *This Court Adopts the Findings of Fact and Misconduct*

{¶ 32} These findings of fact and misconduct with respect to Counts I through VII are undisputed, and we adopt them as our own.

### Recommended Sanction

{¶ 33} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 34} The board determined that Burchinal had engaged in at least two types of misconduct that carry presumptions of disbarment: misappropriating his clients' funds and continuing to practice law while his license was under suspension. *See Disciplinary Counsel v. Harter*, 154 Ohio St.3d 561, 2018-Ohio-3899, 116 N.E.3d 1255, ¶ 33 ("The presumptive sanction for an attorney's misappropriation of client funds is disbarment"); *Disciplinary Counsel v. Fletcher*, 135 Ohio St.3d 404, 2013-Ohio-1510, 987 N.E.2d 678, ¶ 10 ("disbarment is the presumptive sanction for continuing to practice law while under suspension").

{¶ 35} In addition, Burchinal's current misconduct represented both a repetition and an escalation of prior misconduct—namely misappropriating funds, failing to commence legal proceedings on behalf of his clients, and lying to his clients about the status of their legal matters. *See Burchinal*, 133 Ohio St.3d 38,

2012-Ohio-3882, 975 N.E.2d 960. In fact, the board determined that "[t]he stipulated facts present an almost unbelievable, but consistent, pattern of lies and more lies to clients, family members of clients, and judges." Burchinal's misconduct at issue in this case began with the theft of more than $41,000 from B.C.—a client who was declared incompetent on Burchinal's own motion. Burchinal lied to B.C. to obtain the funds, and when he was caught, he lied about the extent of his theft. He also repeatedly lied to six other clients about the status of their legal matters. The board described his lying as "almost pathological," but it found no medical or professional evidence to link that behavior to an underlying condition. *See* Gov.Bar R. V(13)(C)(7) (setting forth the requirements for a mental disorder to qualify as a mitigating factor).

{¶ 36} Five aggravating factors are present. Burchinal has prior discipline, acted with a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses, and caused harm to vulnerable clients. *See* Gov.Bar R. V(13)(B)(1), (2), (3), (4), and (8). But just two mitigating factors apply—Burchinal made full and free disclosure to the board and exhibited a cooperative attitude in the disciplinary proceedings *after* the complaint was filed, and he had other sanctions imposed for his criminal conduct. *See* Gov.Bar R. V(13)(C)(4) and (6).

{¶ 37} While the board recognized that Burchinal had "owned" his misconduct by virtue of his extensive stipulations of fact and misconduct in this case, it found that his acceptance of responsibility was "severely tarnished" by his (1) continuing to practice law in breach of the agreement that his counsel struck with the panel chair requiring him to wind down his practice and register his license inactive by September 1, 2019, (2) continuing to practice law while his license was suspended for a registration violation, and (3) lying to two judges about the status of his law license.

{¶ 38} The board acknowledged Burchinal's repeated apologies for his misconduct, and it believed them to be sincere. But citing the scarcity of witness testimony and letters in support of Burchinal, the board concluded that he offered little more than his own regrets and assurance that he could " 'change and * * * get back on the right track.' "

{¶ 39} Although the presumptive sanction of disbarment "may be tempered with sufficient evidence of mitigation or extenuating circumstances," *Disciplinary Counsel v. Edwards*, 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d 857, ¶ 18, the board found that the mitigating evidence in this case was insufficient to overcome the severity and breadth of Burchinal's misconduct. *See Cincinnati Bar Assn. v. Damon*, 140 Ohio St.3d 383, 2014-Ohio-3765, 18 N.E.3d 1183 (permanently disbarring an attorney with no record of prior discipline who, in addition to stealing money from his law firm, accepted legal fees and failed to perform the contracted legal work for multiple clients).

### Objections and Analysis

{¶ 40} Burchinal objects to the board's recommendation that he be permanently disbarred. He argues that his acknowledgement of his misconduct, genuine remorse, payment of restitution, and successful history of working with the Ohio Lawyers Assistance Program ("OLAP") suggest that he is amenable to rehabilitation and that an indefinite suspension from the practice of law will adequately protect the public from additional harm. He also attempts to distinguish his conduct from other cases in which this court has permanently disbarred attorneys for comparable misconduct.

{¶ 41} The board considered—and appropriately discounted—Burchinal's belated acknowledgment of his misconduct and expressions of remorse. And even if we were to afford those factors greater weight in mitigation than the board did, they would not justify a departure from the presumptive sanction of permanent disbarment. While it is true that Burchinal has now made full

restitution to the clients harmed by his misconduct—not all of his payments were made in good faith or in a timely manner, as required by Gov.Bar R. V(13)(C)(3). For example, Burchinal issued a $5,000 check to B.C. when his account did not contain sufficient funds to honor it, and he later attempted to convince B.C. to accept two vehicles as partial reimbursement—knowing full well that he did not have clear title to the vehicles. He took approximately two years to make complete restitution to B.C. and Poole, the latter of whom received the refund of her flat fee just one day before Burchinal's disciplinary hearing. We typically attribute little or no mitigating effect to restitution that was not timely made. *See, e.g., Disciplinary Counsel v. Sarver*, __ Ohio St.3d __, 2020-Ohio-5478, __ N.E.3d __, ¶ 32. We therefore agree with the board's assessment that Burchinal's payment of restitution did not warrant any mitigating effect.

{¶ 42} Burchinal's self-proclaimed successful history of working with OLAP is likewise without merit. At the panel hearing, Megan Snyder, clinical director of OLAP, testified that Burchinal's counsel initially referred him to OLAP during the pendency of his first disciplinary complaint in 2010. At that time, Burchinal entered into a four-year mental-health OLAP contract and complied with its terms. But less than three years after he completed that contract, he began misappropriating money from an incompetent client.

{¶ 43} After a nearly five-year hiatus, Burchinal returned to OLAP in April 2019 when he was facing new disciplinary charges. He entered into a new two-year contract for support and monitoring that required him to check in with OLAP three times a week by telephone and submit reports from his treatment professionals, but he did not comply with those requirements. In fact, Snyder testified that he checked in with OLAP only two times in September 2019 and did not check in at all from October 2019 until February 2020, and from that time on, he checked in only between two to six times a month until his June 2020 disciplinary hearing. He failed to provide OLAP with any report from his

treatment professional detailing his diagnosis and treatment plan until two days before his disciplinary hearing—more than 14 months after he entered into his OLAP contract. Moreover, Burchinal continued to engage in misconduct months after he entered into that OLAP contract and purportedly commenced counseling. On these facts, Burchinal's history with OLAP is anything but successful; nor does it support a less severe sanction.

{¶ 44} "The continuing public confidence in the judicial system and the bar requires that the strictest discipline be imposed in misappropriation cases." *Cleveland Bar Assn. v. Belock*, 82 Ohio St.3d 98, 100, 694 N.E.2d 897 (1998). In *Damon*, 140 Ohio St.3d 383, 2014-Ohio-3765, 18 N.E.3d 1183, we permanently disbarred an attorney who stole money from his law firm and accepted legal fees from multiple clients without performing the contracted legal work. Damon had no prior disciplinary record and presented evidence of his good character and reputation. *Id.* at ¶ 32. We did not give him an opportunity to rehabilitate himself, in part because he refused to acknowledge the wrongfulness of his actions and failed to make voluntary restitution. *Id.* at ¶ 31, 34. By contrast, we have already given Burchinal a second chance, and he came back to tell more lies and again steal money from vulnerable clients.

{¶ 45} In *Fletcher*, 135 Ohio St.3d 404, 2013-Ohio-1510, 987 N.E.2d 678, we disbarred an attorney who represented several clients over a 16-month period while his license was suspended for prior disciplinary offenses. We found that he had violated just six rules of professional conduct, *id.* at ¶ 5-6—in contrast to Burchinal's 37 violations of 14 separate rules. The only aggravating factors were Fletcher's prior discipline, pattern of misconduct, and multiple offenses. Only three mitigating factors were present—like Burchinal, Fletcher stipulated to all the facts and rule violations, but unlike Burchinal, he cooperated in relator's investigation and made timely restitution. *Id.* at ¶ 10. Yet we found that those

factors did not warrant a departure from the presumptive sanction of permanent disbarment for his misconduct. *Id.* at ¶ 10-11.

{¶ 46} In this case, there are just two stipulated mitigating factors—Burchinal's *postcomplaint* cooperation and the sanctions imposed for his criminal conduct—to balance against Burchinal's overwhelming three-year pattern of deceit, his theft from an incompetent client, the five aggravating factors involved, and his demonstrated indifference to rehabilitation. We therefore overrule Burchinal's objections to the board's report and hold that the only sanction that will adequately protect the public from future harm is permanent disbarment.

## Conclusion

{¶ 47} Accordingly, Christopher James Burchinal is permanently disbarred from the practice of law in Ohio. Costs are taxed to Burchinal.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Adam P. Bessler, Assistant Disciplinary Counsel, for relator.

Ulmer & Berne, L.L.P., and Alvin E. Mathews Jr., for respondent.

_____