DISCIPLINARY COUNSEL *v.* CLAFLIN.

[Cite as *Disciplinary Counsel v. Claflin,*
107 Ohio St.3d 31, 2005-Ohio-5827.]

(No. 2005-0791—Submitted June 28, 2005—Decided November 16, 2005.)

**Per Curiam.**

{¶ 1} Respondent, Christopher Richard Claflin of Mayfield Heights, Ohio, Attorney Registration No. 0058554, was admitted to the Ohio bar in 1992. He is not currently registered as a practicing attorney in Ohio.

{¶ 2} On January 13, 2005, relator, Disciplinary Counsel, filed an amended complaint charging respondent with professional misconduct. A panel of the Board of Commissioners on Grievances and Discipline held a hearing and made findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

### Misconduct

{¶ 3} In January 1998, Rodney Truitt retained respondent to represent Truitt's minor son in an automobile-accident case against Westfield Insurance Company. Truitt signed a contingency-fee contract with respondent's law firm.

{¶ 4} In May 1999, respondent negotiated a $10,000 settlement of the case on Truitt's behalf. The following month, Westfield Insurance Company sent respondent a settlement check in that amount, along with a letter stating Westfield's understanding that respondent would "hold the check in escrow until such time that the Release is properly signed, notarized and returned" to Westfield.

{¶ 5} Respondent received the check in June 1999 and deposited it in his office bank account. The same day, he paid himself $3,333.33 from those settlement proceeds and moved that lesser amount to a separate business account.

{¶ 6} Despite repeated written requests from Westfield Insurance Company in 1999 and 2000, respondent did not return a signed and notarized release to that company. Respondent also failed to deliver the settlement funds to Truitt for 32 months. During those 32 months, respondent did not maintain the funds in an Interest on Lawyer Trust Accounts ("IOLTA") account. From June 1999 until February 2002, respondent used Truitt's portion of the settlement proceeds to operate his law office and for other personal uses. He wrote seven checks to himself and made 29 withdrawals from the office account between July 1999 and August 2001, and his actions dissipated the settlement proceeds that properly belonged to the Truitts. For six of the 32 months during which he failed to pay out the Truitts' portion of the settlement proceeds, the account for those funds carried a balance at the end of the month of just $2.99.

{¶ 7} In January 2000, Westfield Insurance Company filed a grievance against respondent with the Cuyahoga County Bar Association. Respondent replied to

the grievance, claiming that his delay in sending a signed release to Westfield was the result of a problem with the language in the release. He stated that he was in the process of negotiating a resolution to the problem and assured the bar association that the "settlement has never been disbursed and is still being held pending completion of the settlement." Based on respondent's reply, the Cuyahoga County Bar Association dismissed the grievance in June 2000.

{¶ 8} In January 2002, after leaving several messages, Truitt spoke with respondent about the settlement. At the conclusion of the call, respondent agreed to pay the settlement proceeds to Truitt, but insisted that Truitt make an appointment for an in-person meeting to pick up the check. Respondent arranged for an in-person meeting approximately two weeks later.

{¶ 9} Truitt received a check from respondent for $6,666.67 in February 2002. Respondent never provided a signed release to Westfield Insurance Company.

{¶ 10} The board found that respondent had thereby violated DR 1–102(A)(4) (barring an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(6) (barring a lawyer from engaging in conduct adversely reflecting on his fitness to practice law), 9–102(B)(3) (requiring a lawyer to maintain complete records of all client funds and to render appropriate accounts regarding them), and 9–102(B)(4) (requiring prompt payment of the client's funds or other property in the lawyer's possession). Two other allegations against respondent in the amended complaint were dismissed.

## Sanction

{¶ 11} In recommending a sanction for respondent's misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The board identified one aggravating factor: the harm that respondent's misconduct caused to a vulnerable client. BCGD Proc.Reg. 10(B)(1)(h). According to a written statement from Truitt, his son chose to delay his college education for two years in order to work and save money. "The settlement from Westfield Insurance would have made a huge difference in his decision," Truitt wrote, and "[t]he cost of delaying his education is impossible to calculate."

{¶ 12} The board did note two mitigating factors as well: the absence of any prior disciplinary record and respondent's cooperative attitude during the disciplinary process. BCGD Proc.Reg. 10(B)(2)(a) and (d). The board, however, questioned the sincerity of respondent's claim that the language of the release had prompted his delay in finalizing the settlement, and the board also expressed doubts about respondent's expression of remorse.

{¶ 13} The panel recommended that respondent be suspended from the practice of law for two years, with one year of the suspension stayed. The board

accepted this recommendation and added a recommendation that respondent be ordered to pay interest to his client for the period when the settlement proceeds were withheld.

{¶ 14} We agree with the board that respondent violated the provisions cited above, and we agree with the board's recommended sanction. Misappropriation of a client's money "cannot be tolerated," and the presumptive disciplinary measure for acts of misappropriation is disbarment. *Dayton Bar Assn. v. Gerren*, 103 Ohio St.3d 21, 2004-Ohio-4110, 812 N.E.2d 1280, ¶ 14. And we have stated as well that an attorney who has violated DR 1–102(A)(4) "will be actually suspended from the practice of law for an appropriate period of time." *Toledo Bar Assn. v. Kramer* (2000), 89 Ohio St.3d 321, 323, 731 N.E.2d 643. Respondent's months-long misuse of his client's funds, coupled with his misrepresentations to the Cuyahoga County Bar Association, represent serious misconduct that cannot be tolerated in a learned profession grounded on integrity, respectability, and candor.

{¶ 15} Even so, we have tempered sanctions imposed on misbehaving lawyers when their misconduct is "an isolated incident and not a course of conduct in an otherwise unblemished legal career." *Kramer*, 89 Ohio St.3d at 323, 731 N.E.2d 643. Respondent has evidently committed no other acts of misconduct, and he did pay the settlement proceeds to the Truitts before this disciplinary process commenced. Disbarment would be too severe a penalty in these circumstances, but a complete stay of respondent's period of suspension would be too lenient, given the board's concerns about respondent's expressions of remorse and the complete absence of any support in the record for respondent's character or reputation. The board has struck the right balance by recommending a two-year suspension with one year of that suspension stayed.

{¶ 16} Accordingly, respondent is hereby suspended from the practice of law in Ohio for a period of two years, with one year of the suspension stayed on the condition that (1) respondent commit no further misconduct during the two-year suspension period and (2) he provides full restitution to the Truitts within 30 days of this order by paying interest on their share of the settlement proceeds at a statutory rate for the 32–month period when those funds were withheld from them. If respondent fails to comply with these conditions, the stay will be lifted, and respondent will serve the entire term as a period of actual suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'DONNELL and LANZINGER, JJ., concur.

O'CONNOR, J., would stay only six months of the suspension.

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Assistant Disciplinary Counsel, for relator.

Christopher R. Claflin, pro se.