[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Gorby,* Slip Opinion No. 2015-Ohio-476.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

DISCIPLINARY COUNSEL *v*. GORBY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Gorby,* Slip Opinion No. 2015-Ohio-476.]**

*Attorneys—Misconduct—Failure to inform clients of lack of malpractice insurance—Failure to hold clients' funds in trust account—One-year suspension, stayed.*

(No. 2014-0541—Submitted July 8, 2014—Decided February 10, 2015.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2013-043.

_____

**Per Curiam**.

{¶ 1} Respondent, Jennifer Ann Gorby of Salem, Ohio, Attorney Registration No. 0073833, was admitted to the practice of law in Ohio in 2001.

{¶ 2} On August 2, 2013, a probable-cause panel of the Board of Commissioners on Grievances and Discipline[1] certified a complaint filed by relator, disciplinary counsel, that charged Gorby with five violations of the Rules

_____

[1] Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct. *See* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII.

of Professional Conduct arising from her alleged misappropriation of funds belonging to her sister and brother-in-law, who were her clients.

{¶ 3} The parties submitted joint stipulations of fact, misconduct, and aggravating and mitigating factors, and the panel heard Gorby's testimony. At the hearing, Gorby admitted the underlying facts and affirmed her stipulations, except that she withdrew her original stipulation of a violation of Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

{¶ 4} The panel issued a report setting forth its findings of fact, finding that Gorby committed all of the alleged misconduct—except for an alleged violation of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), which the panel unanimously dismissed by separate entry. Finding that Gorby's conduct resulted from a family matter gone bad and that she presented little, if any, risk to the public, the panel recommended that her license to practice law in Ohio be suspended for one year, all stayed on the conditions that she commit no further misconduct and submit to a one-year period of monitored probation focusing on law-office and trust-account management.

{¶ 5} The board adopted the panel's findings of fact and misconduct and its recommended sanction. Relator objects to the aggravating and mitigating factors found by the board and urges this court to impose a one-year actual suspension from the practice of law. For the reasons that follow, we overrule relator's objections, adopt the board's findings of fact and misconduct, and suspend Gorby from the practice of law for one year, all stayed on the recommended conditions.

**Misconduct**

{¶ 6}  In 2010, Gorby reduced her workload to approximately 25 hours per week and limited her practice to court-appointed criminal defense and guardian ad litem work in Columbiana County.

{¶ 7}  In April 2011, Gorby's sister, Donna Adams, contacted her regarding a foreclosure action filed against her and her husband, Troy Adams, in the Mahoning County Court of Common Pleas.  Although she did not normally handle civil matters or practice outside of Columbiana County, Gorby agreed to represent them in the foreclosure action at no charge.  There was no written fee agreement, and Gorby failed to advise the Adamses that she did not carry professional liability insurance.

{¶ 8}  Gorby filed an answer and counterclaim against the lender in the foreclosure action on May 19, 2011, and continued to actively represent the Adamses in the matter until the court issued a judgment against them in May 2012.  In connection with this representation, Gorby agreed to receive payments from the Adamses and hold the funds in trust until they saved enough money to stop the foreclosure.  Having limited her practice to court-appointed work, Gorby did not maintain a client trust account, so beginning in June 2011, she deposited the money she received from the Adamses into her business checking account.

{¶ 9}  From June 27, 2011, through March 7, 2012, Gorby deposited a total of $6,400 from the Adamses and $4,600.78 of her personal funds into her business checking account.  Although the Adamses did not authorize her to use their funds for any purpose other than payment of their mortgage, Gorby began writing checks from the account in July 2011 to cover personal and business expenses unrelated to their foreclosure.  Her account balance soon dipped below the amount that she was supposed to be holding in trust for the Adamses— reaching a low of $96.49 when it should have contained $5,500 of the Adamses' money—and remained inadequate in varying degrees to satisfy that obligation

until November 2, 2012, when she deposited $5,500 in personal funds from her husband's retirement account. Just days before making that deposit, she submitted a response to relator's letter of inquiry in which she was less than forthcoming about the situation—advising relator that she was "presently holding $5,500" on the Adamses' behalf.

{¶ 10} By November 2012, the Adamses had divorced and Mr. Adams had filed for bankruptcy. On or about November 28, 2012, Gorby received a letter from Mr. Adams's bankruptcy trustee, requesting that one-half of the $5,550 in entrusted funds be disbursed to him. Because Gorby had withdrawn funds from the account to cover personal and business expenses even after depositing the funds from her husband's retirement account, she deposited an additional $100 of personal funds on December 4, 2012, to bring the account balance to $5,584.49. She issued a $2,775 check to Mr. Adams's bankruptcy trustee on December 7, 2012, and another check for the same amount to her sister on December 13, 2012.

{¶ 11} The board found that Gorby's conduct violated Prof.Cond.R. 1.4(c) (requiring a lawyer to inform the client if the lawyer does not maintain professional liability insurance), 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property), and 8.4(c). We adopt the board's findings of fact and misconduct.

### Sanction

{¶ 12} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final

determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B).[2]

{¶ 13} The board found that Gorby acted with a dishonest or selfish motive when she misappropriated funds belonging to her sister and brother-in-law for her own purposes and that her misappropriation involved a pattern of misconduct. *See* BCGD Proc.Reg. 10(B)(1)(b) and (c).

{¶ 14} The board balanced these aggravating factors against stipulated mitigating factors, including the absence of a prior disciplinary record, Gorby's timely good-faith effort to make restitution, and her full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings. *See* BCGD Proc.Reg. 10(B)(2)(a), (c), and (d). The board also considered Gorby's uncontroverted deposition and hearing testimony regarding her tumultuous and contentious relationship with her sister. The board noted Gorby's testimony that once she became a practicing attorney, her older sister expected her to provide legal services for whatever she wanted and whenever she wanted them. Whether it was a speeding ticket or a foreclosure, her sister expected her to drop everything, no matter what was going on in her own life, and fix everything. Gorby felt that she could not refuse her sister's demands because if she did, her sister would call and complain and harass her or their mother and "cause a big family fight and big family drama." She reported that it had "always been this way" and that it was easier to give in to her sister's demands than to fight. Gorby also testified that while the foreclosure was pending, she also served as the attorney for her grandmother's estate—which created intense disagreements between the sisters, who were both beneficiaries of the estate.

{¶ 15} While acknowledging that the presumptive sanction for misappropriation is disbarment, *see, e.g., Cleveland Bar Assn. v. Dixon*, 95 Ohio

---

[2] Effective January 1, 2015, the aggravating and mitigating factors previously set forth in BCGD Proc.Reg. 10(B)(1) and (2) are codified in Gov.Bar R. V(13). 140 Ohio St.3d CXXIV.

St.3d 490, 2002-Ohio-2490, 769 N.E.2d 816, ¶ 15, the board focused on the primary purpose of the disciplinary sanction, which is not to punish the offender but to protect the public. *Disciplinary Counsel v. Hoppel*, 129 Ohio St.3d 53, 2011-Ohio-2672, 950 N.E.2d 171, ¶ 21. The board considered our decision in *Disciplinary Counsel v. Burchinal*, 133 Ohio St.3d 38, 2012-Ohio-3882, 975 N.E.2d 960, upon which relator relied to support his recommendation that we impose a one-year actual suspension for Gorby's misconduct. However, the board distinguished *Burchinal* on the grounds that it involved misappropriation in multiple cases, neglect of a client matter, and concealment, which warranted the imposition of a two-year suspension with 18 months stayed on conditions, whereas Gorby's misconduct involved misappropriation in just one client matter. *Burchinal* at ¶ 7-11, 20. The board also found that Gorby's clients suffered no harm as a result of her misconduct and that she poses little, if any, threat to the public because her misconduct arose in the context of her very contentious family relationship.

{¶ 16} Having considered Gorby's conduct, the aggravating and mitigating factors, and this court's precedent, the board recommends that we suspend Gorby for one year but that we stay the entire suspension on the conditions that she engage in no further misconduct and submit to a one-year period of monitored probation focusing on law-office and trust-account management.

{¶ 17} Relator objects to the board's findings with regard to the applicable aggravating and mitigating factors and argues that our precedent requires that we impose a sanction greater than a six-month actual suspension from the practice of law in this case.

{¶ 18} First, relator suggests that there is clear and convincing evidence to establish two aggravating factors that were not found by the board—the failure to cooperate with relator's investigation and the failure to acknowledge the wrongful

6

nature of the conduct at issue. Relator argues that Gorby's early representation that she was "presently holding $5,500" entrusted to her by her sister and brother-in-law, when she had actually misappropriated the money, establishes that she failed to cooperate in the disciplinary investigation. However, relator was aware of this misstatement in Gorby's response to his initial letter of inquiry when he stipulated that Gorby made full and free disclosure to the board and demonstrated a cooperative attitude toward the disciplinary proceedings.

{¶ 19} Moreover, it appears that Gorby cooperated in the investigation from that point forward, with the exception that at the hearing, she withdrew her stipulation that she had engaged in dishonesty, fraud, deceit, or misrepresentation in violation of Prof.Cond.R. 8.4(c). Relator contends that because she withdrew that stipulation, she has refused to admit that her conduct was wrongful. While relator is correct that Gorby stated that she did not feel that she had stolen money from her sister, she also fully acknowledged that she took the money and used it without authorization and apologized for her actions, and the board believed that she showed genuine remorse. She explained that it was difficult for her to differentiate between her horrible familial relationship with her sister and her role as her sister's attorney. Moreover, Gorby testified that this conduct would never have happened with a client other than her sister and that it would not happen again.

{¶ 20} We are not bound by the findings of fact or conclusions of law of the panel or board in attorney disciplinary proceedings. *Disciplinary Counsel v. Firth*, 93 Ohio St.3d 173, 181, 754 N.E.2d 219 (2001). However, we generally defer to the credibility determinations of the panel unless the record weighs heavily against those findings, because the panel had the opportunity to observe the witnesses firsthand. *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 8. Here, the record does not weigh heavily

against the findings of the panel, as adopted by the board, and therefore we defer to the panel's credibility determinations.

{¶ 21} Relator also argues that a familial relationship between the grievant and the respondent and the absence of harm to a client are not mitigating factors. Relator is correct that BCGD Proc.Reg. 10(B) does not specifically identify either of these factors as mitigating. But the rule also expressly requires the board to consider "all relevant factors" in determining the appropriate sanction for attorney misconduct. And these factors are most certainly relevant in this case.

{¶ 22} Gorby testified, and the board found, that she and her sister have always had a contentious relationship and that since she obtained her law license, her sister—and her mother—have expected her to drop everything to handle her sister's legal crises with no reimbursement for her time or the expenses she incurs on her sister's behalf. She indicated that it was easier to go along with her sister's demands than to fight them and cause "a big family fight and big family drama." However, she reports that she has learned her lesson about handling legal matters for her family and that it will never happen again.

{¶ 23} In *Stark Cty. Bar Assn. v. Ake*, 111 Ohio St.3d 266, 2006-Ohio-5704, 855 N.E.2d 1206, ¶ 4, 32, attorney Ake knowingly violated a temporary order in his personal divorce proceeding by writing a $94,000 check to his secretary. He then used the funds to pay for a condominium that he had agreed to buy and used his one-half interest in a piece of marital real property to secure a $400,000 individual line of credit. All told, he violated the court's orders on five separate occasions—as a party, an attorney of record, and an officer of the court—because it suited his economic interest to do so. *Id.* at ¶ 39. While Ake's misconduct did not involve the misappropriation of client funds, it did involve the misappropriation of more than $90,000 in marital funds in violation of a court

8

order that was issued to preserve the funds pending an equitable distribution of marital assets by the court or by consent of the parties.

{¶ 24} We found as aggravating factors in *Ake* that the respondent's actions were dishonest and self-serving, that he repeatedly violated several of the same disciplinary rules, and that he refused to recognize that his conduct rose to the level of an ethical violation. *Id.* at ¶ 41. Mitigating factors included the absence of a prior disciplinary record, full and free disclosure during the disciplinary process, and evidence of Ake's good character and reputation apart from the charged misconduct. *Id.* at ¶ 42. Citing testimony and evidence of his integrity and competence, we found that Ake "would not disobey a court order in any situation other than the charged atmosphere of ending his own marriage." *Id.* at ¶ 46. Confident that he would never repeat his transgressions, we suspended him from the practice of law for six months, all stayed on the condition that he commit no further misconduct. *Id.* at ¶ 47. Thus, we recognized that an attorney whose only professional misconduct occurs in his own emotionally charged case may warrant a lesser sanction because the conduct is not likely to reoccur and does not pose a threat to the public.

{¶ 25} We have also stated that because it is of the utmost importance that attorneys maintain their personal and office accounts separate from their clients' accounts, a violation of the rules we have established to protect client funds warrants a substantial sanction whether or not the client has been harmed. *Disciplinary Counsel v. Vogtsberger*, 119 Ohio St.3d 458, 2008-Ohio-4571, 895 N.E.2d 158, ¶ 10. The degree of harm caused by the conduct may, nonetheless, be relevant in determining the appropriate level of that sanction.

{¶ 26} In this case, relator agreed at the hearing that the Adamses suffered no financial harm as a result of Gorby's misconduct—although the bank obtained a judgment against them, they were ultimately able to keep their home. While relator argued that they were denied timely access to their funds, the undisputed

evidence demonstrates that when Mrs. Adams first requested the return of those funds, the Adamses divorce was pending and Mr. Adams had filed for bankruptcy. But relator agreed that if the money had been sitting in a trust account at that time, it would have been proper for Gorby to wait until she received direction from those courts to determine how the funds should be distributed. And while relator now asserts that the Adamses suffered psychological harm as the result of Gorby's breach of trust, there is no evidence to establish whether such harm occurred because neither of them was called to testify.

{¶ 27} Relator's argument that the absence of harm cannot obviate the need to sanction an attorney for misconduct is inapposite. The board does not state that Gorby should not be sanctioned at all for her misconduct because there was no harm. Rather, the board states that in light of all of the mitigating factors—including the absence of harm to the clients and the fact that Gorby's sole misconduct in her nearly 13-year legal career arose out of a contentious family dispute—a lesser sanction will be sufficient both to protect the public and to deter future misconduct. We agree.

{¶ 28} Accordingly, we overrule relator's objections and suspended Jennifer Ann Gorby from the practice of law in Ohio for one year, all stayed on the conditions that she engage in no further misconduct and submit to a one-year period of monitored probation focusing on law-office and trust-account management. Costs are taxed to Gorby.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Scott J. Drexel, Disciplinary Counsel, and Bruce T. Davis, Assistant Disciplinary Counsel, for relator.

Jennifer Ann Gorby, pro se.

_____