DISCIPLINARY COUNSEL v. COLEMAN.

[Cite as *Disciplinary Counsel v. Coleman,*
144 Ohio St.3d 35, 2015-Ohio-2489.]

(No. 2014–2148—Submitted February 4, 2015—Decided June 25, 2015.)

**Per Curiam.**

{¶ 1} Respondent, Marcus Edward Coleman of Cincinnati, Ohio, Attorney Registration No. 0083164, was admitted to the practice of law in Ohio in 2008. We suspended his license to practice on November 1, 2011, for his failure to register as an attorney for the 2011-to-2013 biennium, but we reinstated it the

next day. *See In re Attorney Registration Suspension of Coleman,* 130 Ohio St.3d 1420, 2011-Ohio-5627, 956 N.E.2d 310.

{¶ 2} On March 3, 2014, relator, disciplinary counsel, filed a complaint with the Board of Commissioners on Grievances and Discipline[1] alleging that Coleman had commingled personal funds with those belonging to his client, James F. Love, falsely assured Love that his funds were held in trust, failed to maintain adequate records of client funds in his possession, and failed to reconcile his client trust account on a monthly basis.

{¶ 3} The parties submitted stipulated facts, rule violations, aggravating and mitigating factors, and exhibits. After a hearing, a panel of the board issued a report in which it adopted the parties' stipulations and recommended that Coleman be suspended from the practice of law for two years with 18 months stayed. The board adopted the panel's findings of fact and conclusions of law, but recommended that Coleman be suspended for two years, all stayed on conditions.

{¶ 4} We adopt the board's findings of fact and conclusions of law, but find that a two-year suspension with 18 months stayed on conditions is the appropriate sanction for Coleman's misconduct.

## Misconduct

{¶ 5} In April 2010, Love hired Coleman to represent him in a civil matter. Love later gave Coleman $18,000 to purchase stocks at his direction. Coleman accepted the investment funds and deposited them into his personal account. He soon discovered that because Love was incarcerated, he would need to establish a trust before he could set up the online trading account to facilitate Love's desired investments.

{¶ 6} While Coleman worked on the trust, he began to misappropriate Love's funds. After he deposited fees from his court-appointed work to restore the misappropriated funds, he transferred the entire $18,000 to a newly established client trust account. But he again began misappropriating the funds, and by June 2011, he had misappropriated $16,167. In October 2011, he closed his client trust account. Coleman assured Love that the money remained in his trust account, and when Love directed him to make several disbursements, he made them from his personal funds.

{¶ 7} By late 2011, Love had trouble communicating with Coleman and noticed that his requested disbursements were made with money orders and cashier's checks rather than checks drawn on Coleman's client trust account. On Februa-

---

1. Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct. *See* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII.

ary 5, 2012, he asked Coleman to return the $13,066 that should have remained in his client trust account. Coleman later met with Love and falsely stated that the funds remained in his client trust account, gave him a newly created ledger to account for the funds, and tried to persuade Love not to fire him. After the meeting, Love again requested that Coleman return his money. Coleman delivered a $14,112 check to Love's criminal attorney on April 30, 2012, but he knew that he did not have the funds in his account to cover the check; in fact, his account was overdrawn. Coleman asked Love's attorney not to cash the check until Coleman told him that there were sufficient funds in the account. Coleman was never able to deposit sufficient funds to cover the check, and the check was never cashed. Instead, Coleman made periodic payments to Love beginning in July 2012. By March 22, 2014, he had made full restitution to Love.

{¶ 8} The parties stipulated and the board found that Coleman's conduct violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property), 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held, setting forth the name of the client; the date, amount, and source of all funds received on behalf of the client; the date, amount, payee, and purpose of each disbursement made on behalf of the client; and the current balance for the client), 1.15(a)(3) (requiring a lawyer to maintain a record for each client trust account, setting forth the name of the account; the date, amount, and client affected by each credit and debit; and the balance in the account), 1.15(a)(5) (requiring a lawyer to perform a monthly reconciliation of the funds held in the lawyer's client trust account and to retain a copy of the reconciliation), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

## Sanction

{¶ 9} In determining what sanction to recommend to this court, the board considered the ethical duties Coleman violated, the presence of aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B),[2] and the sanctions imposed in similar cases.

{¶ 10} As to aggravating factors, the panel and board found that Coleman acted with a dishonest or selfish motive by converting $18,000 of his client's money to his own use and that he caused financial harm to Love, whose incarceration made him vulnerable. *See* BCGD Proc.Reg. 10(B)(1)(b) and (h). The board also noted that his one-day attorney-registration suspension is technically an aggravating factor, but gave it little weight. *See* BCGD Proc.Reg.

---

2. Effective January 1, 2015, the aggravating and mitigating factors previously set forth in BCGD Proc.Reg. 10(B)(1) and (2) are codified in Gov.Bar R. V(13), 140 Ohio St.3d CXXIV.

10(B)(1)(a), *Disciplinary Counsel v. Anthony,* 138 Ohio St.3d 129, 2013-Ohio-5502, 4 N.E.3d 1006, ¶ 11. Consistent with the parties' stipulations, the panel and board also found that Coleman's full disclosure and cooperative attitude toward the disciplinary proceedings and his good character and reputation—particularly his work in the Hamilton County Municipal Veterans Court—are mitigating factors. *See* BCGD Proc.Reg. 10(B)(2)(d) and (e). Moreover, the panel and board noted that Coleman has applied for several evening teaching positions to diversify his income stream and has found a mentor willing to assist him in his office management.

{¶ 11} Relator urged the panel to impose a two-year suspension with six months stayed for Coleman's misconduct. In contrast, Coleman argued in favor of a two-year fully stayed suspension. The panel and board examined several cases cited by the parties and found *Disciplinary Counsel v. Edwards,* 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d 857, and *Disciplinary Counsel v. Simon–Seymour,* 131 Ohio St.3d 161, 2012-Ohio-114, 962 N.E.2d 309, to be most instructive.

{¶ 12} Steve Edwards misappropriated $69,500 from his client trust account while experiencing severe financial and marital difficulties. *Edwards* at ¶ 1, 14. He began making restitution before disciplinary counsel initiated his investigation and after his conduct came to light, sought the assistance of the Ohio Lawyers Assistance Program ("OLAP"), which resulted in a mental-illness diagnosis. *Id.* at ¶ 11, 13. Citing an abundance of mitigating factors—including Edwards's mental disability and his personal struggles—we suspended him from the practice of law for two years but stayed the entire suspension on the conditions that he continue to attend mental-health counseling and remain in compliance with his OLAP contract. *Id.* at ¶ 15–16, 20.

{¶ 13} Christine Simon–Seymour neglected a probate matter, misappropriated funds that belonged to the estate, failed to maintain adequate records of client funds entrusted to her, failed to perform monthly reconciliations of her trust account, and made false statements to the probate court. *Simon–Seymour* at ¶ 3–6. Although she had engaged in a pattern of misconduct over a period of several years, she made a full and free disclosure to disciplinary counsel and displayed a cooperative attitude toward the disciplinary proceedings. *Id.* at ¶ 9. On these facts, we suspended her from the practice of law for two years, with six months stayed on conditions. *Id.* at ¶ 12.

{¶ 14} Here, the panel and board were moved by the personal hardships that Coleman faced at the time of his misconduct. He testified that he was a single parent raising his daughter and two nephews without any outside financial support. Due to changes in the Hamilton County Public Defender's Office appointment procedures, his caseload decreased from 15 to 20 appointments to 1

to 3 appointments per month. After he and the children were evicted from their home, they lived with a friend for approximately six months. Coleman explained that during that time, he misappropriated Love's funds to pay for his family's day-to-day living expenses. He stated that he would have made do without using Love's money if he had been on his own but he did not want to subject the children in his care to that type of hardship.

{¶ 15} While acknowledging that Coleman did not have a mental illness or suffer from a chemical dependency, the panel and board nonetheless found that the extenuating circumstances in his personal life should be afforded some mitigating effect. The panel was unwilling to recommend a fully stayed suspension as was imposed in *Edwards*. It also distinguished *Simon–Seymour* —in which we imposed a two-year suspension with just six months stayed—on the grounds that the attorney in that case had engaged in additional misconduct not present in this case and had consented to the discipline, thereby preventing the panel from thoroughly vetting the case at a full hearing. The panel, therefore, recommended that we impose a two-year suspension with 18 months stayed. The board, in contrast, recommended that the entire two years be stayed on the conditions that Coleman work with a law-practice monitor approved by relator for the term of the stayed suspension and that he engage in no further misconduct. Neither party has objected to the board's recommendation.

{¶ 16} Having reviewed the record, we adopt the board's findings of fact and conclusions of law. But we agree with the panel that an actual suspension from the practice of law is warranted in this case.

{¶ 17} Accordingly, Marcus Edward Coleman is suspended from the practice of law in Ohio for two years with 18 months stayed on the conditions that he work with a law-practice monitor approved by relator for the duration of the stayed suspension and engage in no further misconduct. If Coleman fails to comply with the conditions of the stay, the stay shall be lifted, and he will serve the full two-year suspension. Costs are taxed to Coleman.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

PFEIFER and O'NEILL, JJ., dissent and would impose a suspension of two years with the entire term stayed.

---

Scott J. Drexel, Disciplinary Counsel, and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

40

Richard Jay Goldberg, for respondent.