**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Scribner*, **Slip Opinion No. 2023-Ohio-4017.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-4017

DISCIPLINARY COUNSEL *v*. SCRIBNER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Scribner*, Slip Opinion No. 2023-Ohio-4017.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Two-year suspension with 18 months conditionally stayed.*

(No. 2023-0473—Submitted May 16, 2023—Decided November 8, 2023.)

ON CERTIFIED REPORT by the Board of Professional Conduct

of the Supreme Court, No. 2022-033.

_____

**Per Curiam.**

{¶ 1} Respondent, Theodore Ferris Scribner, of Akron, Ohio, Attorney Registration No. 0076063, was admitted to the practice of law in Ohio in 2003.

{¶ 2} In an August 2022 complaint, relator, disciplinary counsel, alleged that Scribner mismanaged and/or misappropriated funds belonging to nine separate

clients, failed to maintain required records regarding his client trust account and his relationship with his clients, and made an improper loan to a tenth client.

{¶ 3} The parties submitted stipulations of fact, misconduct, and aggravating and mitigating factors. They also submitted 36 stipulated exhibits. A three-member panel of the Board of Professional Conduct conducted a hearing at which it heard testimony from Scribner and three character witnesses. The panel issued a report finding that Scribner committed the charged misconduct and recommending that he be suspended from the practice of law for two years with 18 months stayed. The panel further recommended that we place conditions on his reinstatement and require him to serve a one-year period of monitored probation. The board adopted the panel's findings of fact and misconduct and recommended sanction. No objections have been filed.

{¶ 4} After a thorough review of the record, we adopt the board's findings of misconduct and recommended sanction.

## FINDINGS OF FACT AND MISCONDUCT

### Count I—Misappropriation of Client Funds, Mismanagement of Client Trust Account, and Failure to Maintain Required Records

{¶ 5} Scribner is a sole practitioner. The first count of relator's complaint identifies nine personal-injury clients whom Scribner represented during the 2016-2020 time frame. Scribner admitted that he entered into an unwritten contingent-fee agreement with one of those clients and that he failed to maintain copies of the written and signed contingent-fee agreements for five others.

{¶ 6} At all times relevant to this proceeding, Scribner maintained a client trust account and a separate business/operating account. Scribner admits that he failed to maintain monthly reconciliations of his client trust account. And he has stipulated that between January 1, 2015, and December 14, 2020, he withdrew over $73,000 in cash from his client trust account and that due to his failure to maintain

rule-compliant general and client ledgers, it is not possible to connect those cash withdrawals to particular clients.

{¶ 7} Scribner admits that he received personal-injury settlements on behalf of the clients at issue in this count and that during a period of financial strain, he misappropriated portions of those funds belonging to seven of those clients for his own personal or business purposes or to reimburse funds that he had previously misappropriated from other clients.

{¶ 8} Scribner prepared closing statements for the nine personal-injury clients, but he failed to maintain copies of those statements that were signed by himself and the client. And he stipulated that he did not always disburse the clients' settlement proceeds in accordance with the accounting set forth in their closing statements. For example:

- Scribner agreed to hold $454 of Corry Sage's settlement proceeds to pay an ambulance bill; rather than pay that bill, he misappropriated those funds by unilaterally deciding to take them as payment for work he had performed in Sage's separate domestic-relations matter.

- Scribner agreed to hold $2,900 of Candace Teets's $22,000 settlement to pay outstanding liens related to her case. After nine months, he paid a $250 ambulance bill for Teets, but he misappropriated the remaining $2,650 settlement for his own purposes.

- Scribner misappropriated $785 from Kimberly St. Clair and $256.38 from Stacy Rich despite the fact that his closing statements showed that those funds were intended to pay various case-related expenses on behalf of those clients.

- In April 2019, Scribner received a $25,000 settlement check on behalf of Katrina Karnes. Although her expenses—including Scribner's fee— exceeded the settlement amount, Scribner distributed $6,250 to himself and

3

to Karnes. He retained $12,500 of the settlement proceeds on the agreement with Karnes that he would attempt to negotiate Karnes's outstanding medical bills. Karnes's chiropractor agreed to accept $6,000 for his nearly $20,000 bill and loaned the entire $6,000 to Scribner, which Scribner left in his client trust account. Scribner stipulated that instead of paying Karnes's medical bills and refunding the remaining money to Karnes, he misappropriated the full $12,500 by making cash withdrawals and reimbursing other clients. He later repaid the loan he had received from the chiropractor with a check from his client trust account, with the notation "Karnes Final Payment." And he deposited $6,000 in cash to cover the amount of the check.

{¶ 9} There were also irregularities in Scribner's payment of his fees to himself. More specifically:

- Scribner withdrew $4,000 from his client trust account as an advance on his fee for representing Garry Yalung before he even settled the case. When the case settled, Scribner prepared a closing statement that identified his full $10,000 fee—though he disbursed just $6,000 to himself at that time. Instead of timely paying a $1,500 medical bill and disbursing the remaining $2,925 of the settlement proceeds to Yalung, Scribner held them in his client trust account and eventually misappropriated them.

- In Nichole Baldinger's case, Scribner's closing statement showed that he was entitled to a fee of $25,609.75—but he disbursed just $20,000 to himself. There is no record to establish that he ever disbursed the remaining $5,609.75 of his fee.

- The closing statement in Rachel Kornish's case showed that Scribner was entitled to a contingent fee of $5,328—though he never issued a check to himself for that fee. Scribner stipulated that his failure to withdraw those fees from his client trust account resulted in the commingling of personal

and client funds and that some of those funds were used to rectify previous misappropriations and make reimbursements for other improper payments made from his client trust account.

- After settling Sonceriae Bradley's case for $5,000, Scribner collected his $1,250 contingent fee. Bradley then agreed to pay her share of the settlement to Scribner for representing her in a separate misdemeanor case. Scribner left that fee in his client trust account, slowly depleting it through various cash withdrawals over the next several months.

{¶ 10} And on January 17, 2020, Scribner overdrew his client trust account after his bank returned a check that had been deposited into that account without the client's endorsement.

{¶ 11} After relator initiated his investigation, Scribner issued checks to satisfy the outstanding medical bills or subrogation claims of Sage, Teets, St. Clair, Yalung, Rich, and Karnes. In December 2022, he made restitution of $135 to St. Clair and $2,925 to Yalung. The parties and the board have acknowledged that no additional restitution is owed.

{¶ 12} The parties stipulated and the board found that Scribner's conduct violated Prof.Cond.R. 1.5(c)(1) (requiring a lawyer to set forth a contingent-fee agreement in a writing signed by both the client and the lawyer), 1.15(a)(1) (requiring a lawyer to maintain a copy of any fee agreement with a client), 1.15(a)(2) (requiring a lawyer to maintain a record for each client that sets forth the name of the client; the date, amount, and source of all funds received on behalf of the client; and the current balance for each client), 1.15(a)(3) (requiring a lawyer to maintain a record for the lawyer's client trust account, setting forth the name of the account; the date, amount, and client affected by each credit and debit; and the balance in the account), 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of the funds held in the lawyer's client trust account), 1.15(b) (permitting a lawyer to deposit his or her own funds into a client trust

account for the sole purpose of paying or obtaining a waiver of bank service charges), 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred), 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). We adopt these findings of misconduct.

### Count II—Providing Financial Assistance to a Client

**{¶ 13}** Van Jones hired Scribner to represent him in a personal-injury matter. On March 6, 2020, Jones and the alleged tortfeasor agreed to settle the case for $7,500. As of 12 days after reaching the settlement, the alleged tortfeasor had not presented payment to Scribner or Jones. At that time, Scribner entered into a written agreement with Jones in which Scribner agreed to advance $500 of his personal funds to Jones and Jones agreed to repay Scribner from his share of the settlement proceeds. Scribner issued a $500 check to Jones from his operating account, with the notation "PI Settlement." On March 30, Scribner deposited the $7,500 settlement check into his client trust account. Three days later, he paid Jones's outstanding medical bill and distributed the remaining proceeds to himself and Jones in accordance with their written agreements.

**{¶ 14}** Scribner admitted and the board found that this conduct violated Prof.Cond.R. 1.8(e) (prohibiting a lawyer from providing financial assistance to a client in connection with pending or contemplated litigation). We adopt this finding of misconduct.

### SANCTION

**{¶ 15}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the attorney violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 16} The parties stipulated and the board found that Scribner had acted with a dishonest or selfish motive, engaged in a pattern of misconduct, and committed multiple offenses and that his clients were vulnerable; in addition, we note that some clients experienced delays in the distribution of portions of their settlement proceeds. *See* Gov.Bar R. V(13)(B)(2), (3), (4), and (8). As for mitigation, the parties stipulated and the board found that Scribner had a clean disciplinary record; had made a timely, good faith effort to make restitution; had made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings; and had presented evidence of his good character. *See* Gov.Bar. R. V(13)(C)(1), (3), (4), and (5). The board also found that Scribner was genuinely remorseful for his misconduct, had accepted full responsibility for his actions, and had completed a continuing-legal-education ("CLE") course focused on client-trust-account management before his disciplinary hearing.

{¶ 17} Scribner testified that he was experiencing mental-health issues due to challenging situations in his life, including financial difficulties related to a failing business venture, during the period when he committed the misconduct. On relator's recommendation, he had contacted the Ohio Lawyers Assistance Program ("OLAP"). Although he signed a two-year OLAP contract on August 9, 2022, that required him to refrain from the use of all mood-altering substances including alcohol, he did not seek to establish any mental or substance-use disorder as a mitigating factor. *See* Gov.Bar R. V(13)(C)(7).

{¶ 18} "The presumptive sanction for misappropriation of client funds is disbarment." *Disciplinary Counsel v. Burchinal*, 133 Ohio St.3d 38, 2012-Ohio-3882, 975 N.E.2d 960, ¶ 17. However, this presumption "may be tempered with sufficient evidence of mitigating or extenuating circumstances." *Disciplinary Counsel v. Edwards*, 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d 857, ¶ 18.

{¶ 19} Here, the board considered seven misappropriation cases in which we imposed sanctions ranging from a fully stayed one-year suspension to a two-year suspension with one year conditionally stayed. For example, in *Disciplinary Counsel v. Gorby*, 142 Ohio St.3d 35, 2015-Ohio-476, 27 N.E.3d 510, the attorney engaged in dishonest conduct, commingled personal and client funds, and misappropriated approximately $6,400 from her sister- and brother-in-law, whom she was representing in a foreclosure proceeding. Recognizing that Gorby's clients had suffered no harm and that Gorby posed little, if any, threat to the public because her misconduct was the product of a very contentious family relationship, *id.* at ¶ 15, we suspended her for one year but stayed the entire suspension on the conditions that she engage in no further misconduct and submit to a one-year period of monitored probation focused on law-office and trust-account management, *id.* at ¶ 28.

{¶ 20} In *Disciplinary Counsel v. Corner*, 145 Ohio St.3d 192, 2016-Ohio-359, 47 N.E.3d 847, an attorney overdrew her client trust account on several occasions, misused that account for personal expenses, commingled personal and client funds, misappropriated client funds, failed to maintain required client-trust-account records, and made a false statement to a client about the reason she could not promptly distribute the client's settlement proceeds. Making matters worse, those violations occurred after the relator terminated an earlier investigation based on Corner's assurances that she understood her obligations with respect to the management of her client trust account. *See id.* at ¶ 13. Although Corner engaged in a pattern of misconduct involving multiple offenses, she had no prior disciplinary record, cooperated in the ensuing disciplinary proceedings, and established the existence of a qualifying mental disorder. *Id.* at ¶ 34-35. We imposed a two-year suspension for Corner's misconduct but stayed the second year on the conditions that she commit no further misconduct, continue to participate in appropriate

mental-health treatment, and remain in full compliance with her OLAP contract. *Id.* at ¶ 44.

{¶ 21} In *Disciplinary Counsel v. Joltin*, 147 Ohio St.3d 490, 2016-Ohio-8168, 67 N.E. 3d 780, we imposed a two-year suspension, with one year conditionally stayed, on an attorney who—in addition to committing many of the same client-trust-account violations that Scribner committed here—neglected a client's legal matter and initially failed to cooperate in the ensuing disciplinary investigation. *See id.* at ¶ 34. Conditions of the stay included a period of monitored probation, completion of CLE focused on client-trust-account management, and OLAP compliance. *Id.*

{¶ 22} And in *Disciplinary Counsel v. Coleman*, 144 Ohio St.3d 35, 2015-Ohio-2489, 40 N.E.3d 1092, the attorney engaged in dishonest conduct, commingled personal and client funds, misappropriated approximately $18,000 in client funds, and failed to maintain required client-trust-account records, including ledgers and monthly reconciliations. Aggravating factors—consisting of Coleman's dishonest motive, financial harm to a vulnerable client, and a prior one-day attorney-registration suspension—were balanced against Coleman's cooperative attitude toward the disciplinary proceedings, his good character and reputation, and his efforts to rectify some factors that had contributed to his misconduct. *Id*. at ¶ 10. We suspended Coleman for two years with 18 months stayed on the conditions that he commit no further misconduct and work with a law-practice monitor for the duration of his stayed suspension. *Id*. at ¶ 17.

{¶ 23} After considering the range of sanctions we have imposed for similar misconduct, the board recommends that we suspend Scribner for two years with 18 months stayed. In addition, the board recommends that we condition Scribner's reinstatement to the practice of law on the submission of proof that he has complied with his August 9, 2022 OLAP contract and any extension thereof and has completed three hours of CLE focused on client-trust-account management, in

addition to the requirements of Gov.Bar R. X. Furthermore, the board recommends that upon reinstatement, Scribner be required to serve a one-year period of monitored probation focused on his law-office and client-trust-account management. Having considered Scribner's misconduct, the aggravating and mitigating factors, and our applicable precedent, we agree that a two-year suspension with 18 months stayed, with conditions on reinstatement and a period of monitored probation, is the appropriate sanction in this case.

### CONCLUSION

{¶ 24} Accordingly, Theodore Ferris Scribner is suspended from the practice of law in Ohio for two years with 18 months stayed on the condition that he commit no further misconduct. If Scribner fails to comply with the condition of the stay, the stay will be lifted and he will serve the full two-year suspension. In addition to the requirements of Gov.Bar R. V(24), Scribner's reinstatement to the practice of law shall be conditioned on proof of compliance with his August 9, 2022 OLAP contract and any extension thereof and completion of three hours of CLE focused on client-trust-account management, in addition to the hours required by Gov.Bar R. X. Upon reinstatement, Scribner shall serve a one-year period of monitored probation in accordance with Gov.Bar R. V(21) focused on his law-office and client-trust-account management. Costs are taxed to Scribner.

Judgment accordingly.

KENNEDY, C.J., and DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

FISCHER, J., concurs in part and dissents in part, with an opinion.

_____

**FISCHER, J., concurring in part and dissenting in part.**

{¶ 25} Over a five-year period, respondent, Theodore Ferris Scribner, mismanaged and/or misappropriated funds belonging to nine clients, failed to maintain required records regarding his client trust account and his relationships

with his clients, and made an improper loan to a tenth client. Scribner admitted that during a period of financial strain, he used personal-injury settlements belonging to his clients for his own personal or business purposes or to reimburse funds that he had previously misappropriated from clients. Specifically, Scribner withdrew $73,345.10 in cash from his Interest on Lawyers' Trust Account ("IOLTA"), and due to his failure to maintain rule-compliant general and client ledgers, he made it impossible to connect those withdrawals to particular clients.

{¶ 26} All in all, Scribner committed ten violations of the Rules of Professional Conduct: (1) Prof.Cond.R. 1.5(c)(1) (requiring a lawyer to set forth a contingent-fee agreement in a writing signed by both the client and the lawyer); (2) Prof.Cond.R. 1.8(e) (prohibiting a lawyer from providing financial assistance to a client in connection with pending or contemplated litigation); (3) Prof.Cond.R. 1.15(a)(1) (requiring a lawyer to maintain a copy of any fee agreement with a client); (4) Prof.Cond.R. 1.15(a)(2) (requiring a lawyer to maintain a record for each client that sets forth the name of the client; the date, amount, and source of all funds received on behalf of the client; and the current balance for each client); (5) Prof.Cond.R. 1.15(a)(3) (requiring a lawyer to maintain a record for the lawyer's client trust account, setting forth the name of the account; the date, amount, and client affected by each credit and debit; and the balance in the account); (6) Prof.Cond.R. 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of the funds held in the lawyer's client trust account); (7) Prof.Cond.R. 1.15(b) (permitting a lawyer to deposit his or her own funds into a client trust account for the sole purpose of paying or obtaining a waiver of bank service charges); (8) Prof.Cond.R. 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred); (9) Prof.Cond.R. 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to

receive); and (10) Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

{¶ 27} Today, a majority of this court adopts the Board of Professional Conduct's recommendations that Scribner be suspended from the practice of law for two years, with 18 months stayed, and that he serve a one-year period of monitored probation. I believe that the sanction adopted by the majority does not adequately protect the public. In accord with the sanctions imposed in serious attorney-misconduct cases in which misappropriation was one of several violations, Scribner should have more "time out" and additional monitoring to better protect the public. In my view, the appropriate sanction is a two-year suspension, with one year stayed, and two years of monitored probation with the other conditions recommended by the board. Thus, I respectfully dissent in part.

**Appropriate Sanction for Misappropriation of Client Funds**

{¶ 28} "[M]isappropriation of client funds is an egregious violation of a lawyer's ethical responsibilities," *Disciplinary Counsel v. Connaughton*, 75 Ohio St.3d 644, 645, 665 N.E.2d 675 (1996), and "[t]he presumptive sanction for misappropriation of client funds is disbarment," *Disciplinary Counsel v. Burchinal*, 133 Ohio St.3d 38, 2012-Ohio-3882, 975 N.E.2d 960, ¶ 17. However, when there were mitigating circumstances, this court has adopted a lesser sanction. *Disciplinary Counsel v. Wise*, 85 Ohio St.3d 169, 171, 707 N.E.2d 852 (1999). That lesser sanction includes an actual suspension from the practice of law, but some of the suspension may be stayed if the misconduct is an isolated incident and not a course of conduct throughout the attorney's career. *See Disciplinary Counsel v. Claflin*, 107 Ohio St.3d 31, 2005-Ohio-5827, 836 N.E.2d 564, ¶ 14-15.

{¶ 29} A majority of the court adopts the board's recommended sanction of a two-year suspension, with 18 months stayed, and one year of monitored probation. In adopting the board's recommended sanction, the majority opinion focuses on four of the seven cases that the board relied on: *Disciplinary Counsel v.*

*Gorby*, 142 Ohio St.3d 35, 2015-Ohio-476, 27 N.E.3d 510; *Disciplinary Counsel v. Corner*, 145 Ohio St.3d 192, 2016-Ohio-359, 47 N.E.3d 847; *Disciplinary Counsel v. Coleman*, 144 Ohio St.3d 35, 2015-Ohio-2489, 40 N.E.3d 1092; and *Disciplinary Counsel v. Joltin*, 147 Ohio St.3d 490, 2016-Ohio-8168, 67 N.E.3d 780. The suspensions imposed in those disciplinary cases for misappropriating client funds range from one year fully stayed, *Gorby* at ¶ 28, to two years with 18 months stayed, *Coleman* at ¶ 17, to two years with one year stayed, *Corner* at ¶ 44; *Joltin* at ¶ 34.

{¶ 30} While I agree with the majority opinion that *Corner* and *Joltin* are on point, I would also consider *Claflin* and *Trumbull Cty. Bar Assn. v. Dull*, 151 Ohio St.3d 601, 2017-Ohio-8774, 91 N.E.3d 739. In *Claflin*, the respondent failed to deliver a $10,000 settlement to his client for nearly three years. *Claflin* at ¶ 4-6. This court determined that Claflin had harmed a vulnerable client, *id.* at ¶ 11, and that his "months-long use of his client's funds" and misrepresentations to the Cuyahoga County Bar Association could not be tolerated, *id.* at ¶ 14. The court also recognized that Claflin had paid the client prior to the disciplinary proceedings and had committed no other misconduct. *Id.* at ¶ 15. Considering those factors, this court found that a two-year suspension, with one year conditionally stayed, struck the right balance to protect the public. *See id.*

{¶ 31} And in *Dull*, the respondent misappropriated $37,000 of his client's money for his own personal use. *Dull* at ¶ 4-5. Dull paid back the misappropriated money with interest after his client filed a grievance with the Trumbull County Bar Association. *Id.* at ¶ 6. This court determined that a two-year suspension, with one year conditionally stayed, was appropriate because Dull had misappropriated a significant amount of money, failed to retain the appropriate client-trust records required by our rules, and had a dishonest and selfish motive. *Id.* at ¶ 14-16. The court found that this sanction was consistent with the sanctions imposed in other cases involving attorneys who engaged in isolated incidents of misappropriation in

otherwise unblemished legal careers. *Id.* at ¶ 16, citing *Claflin* and *Disciplinary Counsel v. Gildee*, 134 Ohio St.3d 374, 2012-Ohio-5641, 982 N.E.2d 704 (imposing a two-year suspension, with one year conditionally stayed, on an attorney who misappropriated funds and engaged in other misconduct in a single client's case but had an otherwise untarnished legal career).

{¶ 32} Here, Scribner misappropriated over $73,000 of client funds in what appears to be some sort of Ponzi scheme. After money from one client would be placed in Scribner's IOLTA, Scribner would pay off some of the client's expenses and use the remainder for personal expenses or to reimburse other clients—and then repeat the process. There was also an occasion on which Scribner failed to take his attorney fee from the IOLTA and thus commingled his earned fee with his IOLTA. Scribner committed additional violations by providing financial assistance to a client in connection with pending or contemplated litigation and by failing to maintain copies of written and signed contingent-fee agreements in at least six instances.

{¶ 33} Scribner's misconduct was not a single incident of misconduct or misconduct involving a single client—he committed numerous and repeated violations of the Rules of Professional Conduct over a number of years. While he has no prior discipline and generally has an unblemished legal career, we cannot discount this pattern of mismanagement and misappropriation of client funds. Scribner's misconduct is most similar to the misconduct in *Corner* and *Joltin*, as described in the majority opinion, and is arguably more egregious than the misappropriation in *Claflin* and *Dull*. Therefore, I would impose a two-year suspension, with one year conditionally stayed, for a total "time out" of 12 months and would impose a two-year term of monitored probation given Scribner's lengthy history of misappropriation and significant problems in managing his IOLTA. I concur in the majority opinion to the extent that it adopts the reinstatement conditions recommended by the board.

14

**Conclusion**

**{¶ 34}** We cannot tolerate members of the bar misappropriating the funds of one client, let alone the funds of nine clients. *See Claflin*, 107 Ohio St.3d 31, 2005-Ohio-5827, 836 N.E.2d 564, at ¶ 14. Attorneys must resist the lure of accessible client funds, even when times are hard, to ensure that the public will have the confidence that attorneys will act in accordance with the Rules of Professional Conduct. Stealing from clients, no matter the reason for doing so, is a significant breach of that attorney-client trust. In this case, to adequately protect the public from future harm, we should suspend Scribner from the practice of law for two years, with one year stayed on the conditions recommended by the board, and impose a two-year term of monitored probation. Because the majority adopts a lesser sanction, I respectfully dissent in part.

————————————

Joseph M. Caligiuri, Disciplinary Counsel, and Kelli C. Schmidt and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

Plakas Mannos and Peter T. Cahoon, for respondent.

————————————